# **Exhibit A**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Eugene Ashley - Bar No. 171885/Cara Mae Acibo - Bar No. 322303/
Emma B. Lloyd - Bar No. 322374
HOGE, FENTON, JONES & APPEL, INC.
55 S. Market Street, Suite 900
San Jose, California 95113

TELEPHONE NO.: (408) 287-9501    FAX NO.: (408) 287-2583
ATTORNEY FOR *(Name)*: Plaintiff STOER CONSTRUCTION INC.

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 8/17/2021 4:12 PM
Reviewed By: A. Villanueva
Case #21CV387612
Envelope: 7081613**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SANTA CLARA**
STREET ADDRESS: 191 N. First Street
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME:

CASE NAME: STOER CONSTRUCTION INC. V. BENSON SECURITY SYSTEMS, INC., et al

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: |
|---|---|---|---|---|
| ☒ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ **Counter** ☐ **Joinder** Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 21CV387612 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☒ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties        d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence           f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☒ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action *(specify)*: 10
5. This case ☐ is ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 17, 2021
Eugene Ashley
_____
(TYPE OR PRINT NAME)          ►          _____
                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

4526364

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

E-FILED
8/17/2021 4:12 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
21CV387612
Reviewed By: A. Villanueva
Envelope: 7081613

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BENSON SECURITY SYSTEMS, INC., an Arizona Corporation; SHAWN BENSON, an individual; ERIC BENSON, an individual; CORY BENSON, an individual; and DOES 1 THROUGH 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
STOER CONSTRUCTION, INC., a California corporation

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Santa Clara County Superior Court
191 N. First Street
San Jose, California 95113

CASE NUMBER:
*(Número del Caso):*
**21CV387612**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eugene Ashley, Cara Mae Acibo, and Emma B. Lloyd
HOGE, FENTON, JONES & APPEL, INC.
55 S. Market Street, Suite 900, San Jose, California 95113

DATE: 8/17/2021 4:12 PM   Clerk of Court      Clerk, by   A. Villanueva   , Deputy
*(Fecha)*                                       *(Secretario)*                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

E-FILED
8/17/2021 4:12 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
21CV387612
Reviewed By: A. Villanueva

Eugene Ashley (SBN 171885)
eugene.ashley@hogefenton.com
Cara Mae Acibo (SBN 322303)
cara.mae.acibo@hogefenton.com
Emma B. Lloyd (SBN 322374)
emma.lloyd@hogefenton.com
HOGE, FENTON, JONES & APPEL, INC.
55 South Market Street, Suite 900
San Jose, California 95113-2396
Phone: 408.287.9501
Fax: 408.287.2583

Attorneys for Plaintiff
STOER CONSTRUCTION, INC.,
a California corporation

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| STOER CONSTRUCTION, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>BENSON SECURITY SYSTEMS, INC., an Arizona Corporation; SHAWN BENSON, an individual; ERIC BENSON, an individual; CORY BENSON, an individual; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. 21CV387612<br><br>(1) RECOVERY OF PAYMENTS TO UNLICENSED CONTRACTOR (BUSINESS & PROFESSIONS CODE §7031(b));<br>(2) INTENTIONAL MISREPRESENTATION;<br>(3) NEGLIGENT MISREPRESENTATION;<br>(4) BREACH OF CONTRACT;<br>(5) NEGLIGENCE;<br>(6) VIOLATION OF BUSINESS & PROFESSIONS CODE §17200;<br>(7) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;<br>(8) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;<br>(9) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; and<br>(10) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS |

Plaintiff STOER CONSTRUCTION, INC., a California corporation ("Stoer"), alleges as follows:

///

## PARTIES

1.      Stoer is a corporation, organized under the laws of, and authorized to do business in, the State of California.  Stoer maintains its principal place of business at 1800 Hamilton Avenue, Suite 130, San Jose, California 95125.  Stoer is, and at all times herein mentioned was, a contractor licensed under the laws of the State of California, with California contractor's license number 1000445.

2.      Stoer is informed and believes, and thereon alleges, that Defendant BENSON SECURITY SYSTEMS, INC. ("Benson Security Systems") is a corporation organized and existing under the laws of the State of Arizona, with a principal place of business at 2065 W. Obispo Avenue, #101, Gilbert, Arizona 85233.  Stoer is further informed and believes, and thereon alleges, that Benson Security Systems is a contractor licensed under the laws of the State of California, with California license number 795362 and having minimum contacts with the State of California.  Stoer is further informed and believes, and thereon alleges, that Benson Security Systems is the majority Owner of Benson Systems of Northern California, LLC ("Benson Systems of Northern California"), a California limited liability company with its principal place of business at 2261 B The Alameda, Santa Clara, California 95050, with a pending bankruptcy action in the United States Bankruptcy Court for the District of Arizona, case number 2:21-bk-04680-MCW, filed June 16, 2021.  Stoer is further informed and believes, and thereon alleges, that Benson Security Systems is the Manager of Benson Systems of Northern California.

3.      Stoer is informed and believes, and thereon alleges, that Defendant SHAWN BENSON is an individual residing in the State of Arizona.  Stoer is further informed and believes, and thereon alleges, that Shawn Benson is the Director and President of Benson Security Systems.  Stoer is further informed and believes, and thereon alleges, that Shawn Benson is a Member of Benson Systems of Northern California.

4.      Stoer is informed and believes, and thereon alleges, that Defendant ERIC BENSON is an individual residing in the State of Arizona.  Stoer is further informed and

1  believes, and thereon alleges, that Eric Benson is the Treasurer of Benson Security

2  Systems.  Stoer is further informed and believes, and thereon alleges, that Eric Benson is

3  the Chief Financial Officer of Benson Systems of Northern California.

4       5.     Stoer is informed and believes, and thereon alleges, that Defendant CORY

5  BENSON is an individual residing in the State of Arizona.  Stoer is further informed and

6  believes, and thereon alleges, that Cory Benson is the Secretary of Benson Security

7  Systems.

8       6.     The true names and capacities, whether individual, corporate, associate, or

9  otherwise, of the Defendants named herein as DOES 1 through 50, are unknown to

10  Stoer, who therefore sues said Defendants by such fictitious business names.  Stoer will

11  ask for leave to amend this Complaint to show their true names and capacities when they

12  have been ascertained.  Stoer is informed and believes, and thereon alleges, that each

13  fictitiously named Defendant is responsible in some manner for the damages sustained

14  by Stoer as hereinafter alleged.

15       7.     Collectively, Benson Security Systems, Shawn Benson, Eric Benson, Cory

16  Benson, and DOES 1 through 50 are referred to herein as the "Benson Defendants."  On

17  information and belief, at all times mentioned herein, each of the Benson Defendants was

18  the agent, servant, employee, partner, joint venturer, and/or co-conspirator of each of the

19  remaining Benson Defendants.  In so engaging in the conduct hereinafter alleged, each

20  of the Benson Defendants was acting within the course and scope of such agency,

21  employment, partnership, joint venture, conspiracy, and with the knowledge and consent

22  or ratification of each of the remaining Benson Defendants.

23       8.     Stoer is informed and believes, and thereon alleges, that Benson Systems

24  of Northern California is now, and at all times mentioned herein was, the wholly owned

25  subsidiary of the Benson Defendants.  Stoer is informed and believes, and thereon

26  alleges, that the Benson Defendants have never had, and do not have now, a genuine

27  and separate corporate existence apart from Benson Systems of Northern California.

28  The Benson Defendants and Benson Systems of Northern California acted as a single

enterprise with a unity of interest, common business purpose, and unity of ownership such that the separate corporate personalities are merged and indistinguishable.  Benson Systems of Northern California is, and at all times mentioned herein was, a shell company through which the Benson Defendants conducted business in California. Benson Systems of Northern California has in fact been used and exists for the sole purpose of enabling the Benson Defendants to wrongfully transact a portion of their business under an alternate corporate guise and as a conduit for a single venture.

9.      The Benson Defendants, as the parent and alter ego of Benson Systems of Northern California, have been and are conducting, managing, and controlling the affairs of Benson Systems of Northern California with respect to Stoer's claims in this Complaint, as if Benson Systems of Northern California was their own business.  The Benson Defendants have used the separate corporate identity of Benson Systems of Northern California as a shell company for the purpose of unjustly attempting to shield itself from prospective liability.  The Benson Defendants and Benson Systems of Northern California are, and at all times mentioned herein were, acting as a single enterprise.  Recognition of the privilege of separate existence between the Benson Defendants and Benson Systems of Northern California would promote injustice, as the Benson Defendants organized and controlled Benson Systems of Northern California such that it is now, and at all times mentioned herein was, merely an instrumentality, agency, joint venture, conduit, or adjunct of the Benson Defendants, and the Benson Defendants, in bad faith, dominated and controlled Benson Systems of Northern California as set forth below.

## GENERAL ALLEGATIONS

10.      Stoer is a California-licensed contractor hired to construct a new hotel in Milpitas, California, called the LD Element Hotel (the "Project").  The Project requires that Stoer complete several complex scopes of work that relate to electrical systems, plumbing, fire alarms, fire sprinklers, low voltage data systems, and heating, ventilating, and air-conditioning ("HVAC") systems.

11.      To assist with the construction of the Project, Stoer subcontracted the

Benson Defendants' subsidiary company and alter ego, Benson Systems of Northern California, to complete the scopes of work.  Specifically, Stoer entered into six written subcontracts (together, the "Subcontracts") with Benson Systems of Northern California with regard to the Project:

   a.  A written subcontract, dated September 24, 2018, pursuant to which Benson Systems of Northern California agreed to install plumbing in consideration for Stoer's payment of $2,500,000.13 (the "Plumbing Subcontract");

   b.  A written subcontract, dated October 8, 2018, pursuant to which Benson Systems of Northern California agreed to install an HVAC system in consideration for Stoer's payment of $2,100,000.00 (the "HVAC Subcontract");

   c.  A written subcontract, dated October 8, 2018, pursuant to which Benson Systems of Northern California agreed to install a fire sprinkler or fire suppression system in consideration for Stoer's payment of $300,000.00 (the "Fire Sprinkler Subcontract");

   d.  A written subcontract, dated October 9, 2018, pursuant to which Benson Systems of Northern California agreed to install a fire alarm system in consideration for Stoer's payment of $200,000.00 (the "Fire Alarm Subcontract");

   e.  A written subcontract, dated October 9, 2018, pursuant to which Benson Systems of Northern California agreed to install a low voltage data communication system in consideration for Stoer's payment of $200,000.00 (the "LV Subcontract"); and

   f.  A written subcontract, dated October 17, 2018, pursuant to which Benson Systems of Northern California agreed to install an electrical system in consideration for Stoer's payment of $2,950,000.00 (the "Electrical Subcontract").

12.     During the negotiation and execution of each of the Subcontracts from September 2018 to March 2019, the Benson Defendants made representations to Stoer that Benson Systems of Northern California held a valid California contractor license. Specifically, in an effort to comply with California law, the Benson Defendants represented that Benson Systems of Northern California's California contractor's license number was 795362.  That license number was included in each of the written Subcontracts.

13.     The Benson Defendants' representation regarding Benson Systems of Northern California's contractor's license status was false.  Benson Systems of Northern California did not have a valid California contractor license.  Rather, California contractor license number 795362 belonged to Benson Security Systems, the parent company, alter ego, majority owner, and manager of Benson Systems of Northern California.

14.     The Benson Defendants knew its representation about Benson Systems of Northern California's license status was false.  Despite this falsity, the Benson Defendants made the representation to induce Stoer to enter into the six Subcontracts with the Benson Defendants' subsidiary and alter ego, Benson Systems of Northern California, for the Project.  If Benson Systems of Northern California, completed the six Subcontracts, it would have resulted in a minimum $8,250,000 payment from Stoer to Benson Systems of Northern California, which would then pass through to the Benson Defendants.

15.     In reliance on the Benson Defendants' representations, Stoer executed the Subcontracts with Benson Systems of Northern California.

16.     The Subcontracts contained a provision regarding scope, pursuant to which Benson Systems of Northern California agreed to furnish all labor, materials, equipment, and other facilities required to perform the scope of work referenced and fully incorporated in each Subcontract.  Inherent in this provision was Benson Systems of Northern California's duty to perform the scope of work in a workmanlike manner and in accordance with applicable standard industry practices, as a duly licensed California

1 || construction contractor.

2 ||      17.    The Subcontracts also contained a provision regarding contract price.

3 || Pursuant to this provision, Stoer agreed to pay Benson Systems of Northern California a

4 || specific sum for Benson Systems of Northern California's strict performance of work with

5 || respect to each individual Subcontract.

6 ||      18.    The Subcontracts also contained a provision regarding payment, pursuant

7 || to which Stoer agreed to pay Benson Systems of Northern California in monthly progress

8 || payments for ninety percent of the work Benson Systems of Northern California

9 || completed each month.  The payment provision also specified that, once Benson

10 || Systems of Northern California completed the construction work in conformity with the

11 || Subcontracts, and once Stoer and the owner of the Project accepted the work, Stoer

12 || would make final payment to Benson Systems of Northern California.

13 ||      19.    The Subcontracts also contained a provision regarding time.  Pursuant to

14 || this provision, Benson Systems of Northern California agreed to perform its work in a

15 || prompt and diligent manner in accordance with Stoer's progress schedule without

16 || delaying or hindering Stoer's work, or the work of other subcontractors.

17 ||      20.    The Subcontracts also contained a provision regarding compliance.

18 || Pursuant to this provision, Benson Systems of Northern California agreed to comply with

19 || all statutes, codes, regulations, and other applicable laws, and to perform the

20 || construction work with the proper licenses and registrations.  Benson Systems of

21 || Northern California specifically agreed that it was and at all relevant times would be duly

22 || licensed by, and in good standing with, the CSLB.

23 ||      21.    Further, the Subcontracts included a provision entitling attorney fees to the

24 || prevailing party with respect to any disputes arising out of the Subcontracts.  The

25 || attorney fees provision entitled the prevailing party to full compensation for attorney fees

26 || and expert fees.

27 ||      22.    Following the execution of the Subcontracts, Benson Systems of Northern

28 || California began construction pursuant to the schedules and scopes of work identified in

1 same.  The Benson Defendants, however, failed to cause Benson Systems of Northern

2 California to perform the contractual obligations under the Subcontracts, despite the clear

3 and unambiguous nature of those contractual obligations.

4       23.     In particular, by July 2020, Benson Systems of Northern California

5 demonstrated a continued failure to perform work competently, as scheduled, and as

6 budgeted, with regard to the LV Subcontract, the Electrical Subcontract, and the Fire

7 Alarm Subcontract.  The work that was performed under these subcontracts was

8 incorrect, of poor quality, and incomplete.  This caused Stoer to fall behind schedule,

9 forced Stoer to arrange for the subcontracted work to be redone, and forced Stoer to

10 incur additional costs.

11       24.     Stoer timely notified Benson Systems of Northern California, and in some

12 cases provided repeated notifications, of these breaches and provided the opportunity to

13 cure such breaches.  Benson Systems of Northern California failed to cure these

14 breaches, continued to breach the Subcontracts, and demonstrated an inability to

15 adequately perform the contractual obligations under those subcontracts.

16       25.     Due to Benson Systems of Northern California's failure and inability to

17 perform under the LV Subcontract, Electrical Subcontract, and the Fire Alarm

18 Subcontract, Stoer terminated those subcontracts, for cause, on July 27, 2020 and

19 reassigned same to a different, more capable subcontractor.  This left Benson Systems

20 of Northern California with three of the original six Subcontracts: the HVAC Subcontract,

21 Plumbing Subcontract, and Fire Sprinkler Subcontract.

22       26.     The Benson Defendants caused Benson Systems of Northern California to

23 continue the construction work pursuant to the remaining HVAC Subcontract, Plumbing

24 Subcontract, and Fire Sprinkler Subcontract.  However, as before, Benson Systems of

25 Northern California failed to sufficiently perform the obligations pursuant to those

26 subcontracts by failing to provide competent and timely work as contemplated by the

27 applicable schedules and scopes of work, and by failing to adhere to the applicable

28 budgets.  This caused Stoer to fall further behind schedule, forced Stoer to arrange for

1 | the subcontracted work to be redone, and forced Stoer to incur additional costs.

2 |     27.    As with the previous subcontracts under which Bensons Systems of

3 | Northern California failed to perform, Stoer timely notified Benson Systems of Northern

4 | California of the nonperformance of the HVAC Subcontract, Plumbing Subcontract, and

5 | Fire Sprinkler Subcontract, and provided Benson Systems of Northern California with the

6 | opportunity to cure the negative effects (including breach of contract) of Benson Systems

7 | of Northern California's nonperformance.  Benson Systems of Northern California failed

8 | to cure the breaches.

9 |     28.    On October 28, 2020, Stoer terminated the HVAC Subcontract, Plumbing

10 | Subcontract, and Fire Sprinkler Subcontract for cause.  Stoer has since reassigned such

11 | subcontracts to a different, more capable subcontractor.

12 |     29.    In addition to Benson Systems of Northern California's failure and inability

13 | to perform under the Subcontracts, the Benson Defendants, as the parent and alter ego

14 | of Benson Systems of Northern California, and acting as a single enterprise with Benson

15 | Systems of Northern California, caused Benson Systems of Northern California to

16 | engage in fraudulent billing practices.  Specifically, in Benson Systems of Northern

17 | California's invoices to Stoer, Benson Systems of Northern California falsely alleged that

18 | it had completed certain construction work under the Subcontracts and requested

19 | payment for such incomplete work.

20 |     30.    In particular, under the LV Subcontract, Benson Systems of Northern

21 | California billed Stoer for 60% of the subcontracted work, but only completed 48% of

22 | same.  With respect to the Electrical Subcontract, Benson Systems of Northern California

23 | billed Stoer for 76% of the subcontracted work, but only completed 59% of same.  With

24 | respect to the Fire Alarm Subcontract, Benson Systems of Northern California billed

25 | Stoer for 80% of the subcontracted work, but only completed 66% of same.  As for the

26 | Fire Sprinkler Subcontract, Benson Systems of Northern California billed Stoer for 91% of

27 | the subcontracted work, but only completed 67% of same.  With regard to the HVAC

28 | Subcontract, Benson Systems of Northern California billed Stoer for 92% of the

1   subcontracted work, but only completed 63% of same.  Finally, with respect to the

2   Plumbing Subcontract, Benson Systems of Northern California billed Stoer for 80% of the

3   subcontracted work, but only completed 72% of same.

4          31.    Although Benson Systems of Northern California and the Benson

5   Defendants knew Benson Systems of Northern California's statements of work and

6   invoiced amounts were untrue, Benson Systems of Northern California and the Benson

7   Defendants knowingly invoiced Stoer under these false premises.

8          32.    In consideration of the professional relationship Stoer had with the Benson

9   Defendants, Stoer relied on Benson Systems of Northern California's misrepresentations

10  in their invoices, and fully paid each invoice without knowing that the invoices contained

11  fabricated information.  In total, Stoer unknowingly paid Benson Systems of Northern

12  California for work not performed and materials not provided in an amount that exceeds

13  $1,500,000.  Stoer is informed and believes, and on that basis alleges, that all of this

14  money flowed to the Benson Defendants.

15         33.    When Stoer inspected Benson Systems of Northern California's progress at

16  the worksite, Stoer discovered that Benson Systems of Northern California had not

17  completed or performed, and/or had incompetently completed certain, work for which

18  Benson Systems of Northern California had invoiced Stoer, and for which Stoer had

19  already paid.  These fraudulent billing practices also factored into Stoer's decision to

20  terminate the Subcontracts with Benson Systems of Northern California.

21         34.    On October 30, 2020, in accordance with the arbitration provision in the

22  Subcontracts, Stoer initiated arbitration against Benson Systems of Northern California,

23  with the American Arbitration Association ("AAA").

24         35.    Stoer and Benson Systems of Northern California completed the "strike and

25  rank" process, and AAA appointed an arbitrator to oversee the matter.

26         36.    Shortly after the initial arbitration management conference, Stoer

27  discovered that Benson Systems of Northern California did not hold a valid California

28  contractor's license.  Stoer brought this to Benson Systems of Northern California's

1   attention and, pursuant to Business and Professions Code section 7031(b), demanded

2   the repayment of the $6,267,710.99 Stoer paid for the newly discovered unlicensed

3   construction work on the Project.

4         37.    On June 16, 2021, in response to Stoer's demand, Benson Systems of

5   Northern California petitioned for bankruptcy in the United States Bankruptcy District

6   Court for the District of Arizona in case number 2:21-bk-04680-MCW.  Benson Systems

7   of Northern California's bankruptcy petition is an attempt by the Benson Defendants to

8   avoid liability for the illegal and unlicensed construction work performed by Benson

9   Systems of Northern California on the Project, despite having performed such work as

10  the subsidiary and alter ego the Benson Defendants, and acting as a single enterprise

11  with the Benson Defendants.

12                          **FIRST CAUSE OF ACTION**

13  **(Recovery of Payments to Unlicensed Contractor Pursuant to Business and
    Professions Code §7031(b) – Against All Defendants)**

14

15        38.    Stoer incorporates herein by reference each of the preceding paragraphs

16  as if recited herein in full.

17        39.    Stoer entered into six written Subcontracts with Benson Systems of

18  Northern California with respect to the Project as follows:

19             a.  A written subcontract, dated September 24, 2018, pursuant to which

20                 Benson Systems of Northern California agreed to install plumbing in

21                 consideration for Stoer's payment of $2,500,000.13 (the "Plumbing

22                 Subcontract");

23             b.  A written subcontract, dated October 8, 2018, pursuant to which Benson

24                 Systems of Northern California  agreed to install an HVAC system in

25                 consideration for Stoer's payment of $2,100,000.00 (the "HVAC

26                 Subcontract");

27             c.  A written subcontract, dated October 8, 2018, pursuant to which Benson

28                 Systems of Northern California agreed to install a fire sprinkler or fire

1  suppression system in consideration for Stoer's payment of $300,000.00
2  (the "Fire Sprinkler Subcontract");

3     d.  A written subcontract, dated October 9, 2018, pursuant to which Benson
4  Systems of Northern California  agreed to install a fire alarm system in
5  consideration for Stoer's payment of $200,000.00 (the "Fire Alarm
6  Subcontract");

7     e.  A written subcontract, dated October 9, 2018, pursuant to which Benson
8  Systems of Northern California  agreed to install a low voltage data
9  communication system in consideration for Stoer's payment of $200,000.00
10  (the "LV Subcontract"); and

11     f.  A written subcontract, dated October 17, 2018, pursuant to which Benson
12  Systems of Northern California agreed to install an electrical system in
13  consideration for Stoer's payment of $2,950,000.00 (the "Electrical
14  Subcontract").

15      40.  Benson Systems of Northern California entered into the six written
16  Subcontracts with Stoer as the Benson Defendants' subsidiary and alter ego, and acting
17  as a single enterprise with the Benson Defendants.

18      41.  Pursuant to California law, Benson Systems of Northern California was
19  required to possess a valid California contractor's license to perform the above-
20  referenced contracting services.

21      42.  Despite Benson Systems of Northern California's and the Benson
22  Defendants' representations that Benson Systems of Northern California was a licensed
23  contractor authorized to provide contracting services in California, Benson Systems of
24  Northern California did not have a valid California contractor's license.

25      43.  Benson Systems of Northern California performed construction work and
26  provided contracting services to Stoer under the Subcontracts for the Project, despite not
27  holding a valid California contractor's license.

28      44.  Stoer paid Benson Systems of Northern California a total of $6,267,710.99

1  for the unlicensed construction work and subcontracting services on the Project.

2      45.      Pursuant to Business and Professions Code section 7031(b), Stoer is

3  entitled to recover the $6,267,710.99 it paid to Benson Systems of Northern California.

4      46.      The Benson Defendants, and each of them, are jointly and severally liable

5  to Stoer for the repayment of these funds on the basis that the Benson Defendants are

6  the alter ego of Benson Systems of Northern California and, at all times relevant hereto,

7  were acting as a single enterprise with Benson Systems of Northern California.

8      WHEREFORE, Stoer prays for relief as set forth below.

9                    **SECOND CAUSE OF ACTION**

10         **(Intentional Misrepresentation – Against All Defendants)**

11     47.      Stoer incorporates herein by reference each of the preceding paragraphs

12  as if recited herein in full.

13     48.      From September 2018 to March 2019, Stoer and the Benson Defendants

14  engaged in negotiations regarding the six Subcontracts.  Sean Anderson, the President

15  and Chief Executive Officer of Stoer, negotiated the six Subcontracts on behalf of Stoer.

16  On information and belief, Shawn Benson, a member of Benson Systems of Northern

17  California and the Director and President of Benson Security Systems, Eric Benson, the

18  Treasurer of Benson Security Systems and the Chief Financial Officer of Benson

19  Systems of Northern California, and Cory Benson, the Secretary of Benson Security

20  Systems, negotiated the six Subcontracts on behalf of the Benson Defendants.  The

21  negotiations occurred telephonically, in writing, and in person at Stoer's San Jose,

22  California headquarters.

23     49.      During the negotiation and execution of each of the Subcontracts from

24  September 2018 to March 2019, the Benson Defendants represented to Stoer that

25  Benson Systems of Northern California held a valid California contractor's license.

26  Specifically, the Benson Defendants represented that Benson Systems of Northern

27  California held California contractor's license number 795362.  That license number was

28  included in each of the written Subcontracts.  The Benson Defendants represented that

1  this fact was true.

2       50.    The Benson Defendants' representation regarding Benson Systems of

3  Northern California's contractor's license status was false; Benson Systems of Northern

4  California did not have a valid California contractor's license.  Rather, California

5  contractor's license number 795362 belonged to Benson Security Systems, the parent

6  company, majority owner, and alter ego of Benson Systems of Northern California.

7       51.    The Benson Defendants knew their representation about Benson Systems

8  of Northern California's contractor's license status was false when made, or made the

9  representation recklessly and without regard for its truth.

10       52.    Despite this falsity, the Benson Defendants intended that Stoer rely on this

11  representation.  The Benson Defendants made the representation to induce Stoer to

12  enter into the six Subcontracts with Benson Systems of Northern California for the

13  Project.  If Benson Systems of Northern California completed the six Subcontracts, it

14  would have resulted in a minimum $8,250,000 payment from Stoer to Benson Systems of

15  Northern California, which would then pass through to its parent and alter ego, the

16  Benson Defendants.

17       53.    Stoer reasonably relied on this representation.  In reliance on this

18  representation, Stoer executed the Subcontracts with Benson Systems of Northern

19  California.

20       54.    Stoer was harmed as a result of its reliance on the Benson Defendants'

21  false representation.  Under the impression that Benson Systems of Northern California

22  held a valid California contractor's license and was competent and capable of performing

23  the work required under the subject Subcontracts, Stoer authorized Benson Systems of

24  Northern California to perform construction work and contracting services on the Project.

25       55.    Stoer paid Benson Systems of Northern California $6,267,710.99 for work

26  on the Project.  Stoer has been damaged in this amount, as Benson Systems of Northern

27  California is an unlicensed contractor and is not entitled to payment for unlicensed

28  contract work performed in California pursuant to California Business and Professions

1  Code section 7031(b).

2          56.     Stoer's reliance on the Benson Defendants' representation regarding

3  Benson Systems of Northern California's license status was a substantial factor in

4  causing Stoer's harm.

5          57.     Additionally, the Benson Defendants represented to Stoer that Benson

6  Systems of Northern California had completed or performed certain construction work

7  under the Subcontracts, thereby warranting payment from Stoer.  The Benson

8  Defendants represented this fact as true by causing Benson Systems of Northern

9  California to invoice Stoer for the work allegedly performed.

10         58.     The Benson Defendants' representations to Stoer were false because

11  Benson Systems of Northern California did not fully or competently perform construction

12  work under the Subcontracts as alleged in its invoices.  Benson Systems of Northern

13  California and the Benson Defendants were not entitled to receive payment this work.

14         59.     Specifically, Between September 2018 and September 2020, the Benson

15  Defendants caused Benson Systems of Northern California to engage in a pattern of

16  fraudulently billing Stoer for incomplete work under the false representation that such

17  work was complete.

18         60.     In particular, under the LV Subcontract, the Benson Defendants caused

19  Benson Systems of Northern California to bill Stoer for 60% of the subcontracted work,

20  but Benson Systems of Northern California has only completed 48% of same.  With

21  respect to the Electrical Subcontract, the Benson Defendants caused Benson Systems of

22  Northern California to bill Stoer for 76% of the subcontracted work, but Benson Systems

23  of Northern California only completed 59% of same.  Regarding the Fire Alarm

24  Subcontract, the Benson Defendants caused Benson Systems of Northern California to

25  bill Stoer for 80% of the subcontracted work, but Benson Systems of Northern California

26  only completed 66% of same.  As for the Fire Sprinkler Subcontract, the Benson

27  Defendants caused Benson Systems of Northern California to bill Stoer for 91% of the

28  subcontracted work, but Benson Systems of Northern California only completed 67% of

1   same.  With regard to the HVAC Subcontract, the Benson Defendants caused Benson

2   Systems of Northern California to bill Stoer for 92% of the subcontracted work, but

3   Benson Systems of Northern California only completed 63% of same.  Finally, with

4   respect to the Plumbing Subcontract, the Benson Defendants caused Benson Systems of

5   Northern California to bill Stoer for 80% of the subcontracted work, but Benson Systems

6   of Northern California only completed 72% of same.

7        61.    In total, between September 2018 and September 2020, the Benson

8   Defendants knowingly and intentionally caused Benson Systems of Northern California to

9   overbill Stoer for incomplete and unperformed work, and undelivered materials by over

10   $1,500,000.

11        62.    When the Benson Defendants made these false representations in Benson

12   Systems of Northern California's invoices to Stoer, the Benson Defendants knew that the

13   representations were false, or made the representations recklessly without regard for

14   their truth.

15        63.    The Benson Defendants intended that Stoer rely on the representations.

16        64.    Stoer reasonably relied on the Benson Defendants' representation and

17   unknowingly paid Benson Systems of Northern California for the incomplete and

18   unperformed work and undelivered materials and equipment as falsely invoiced by

19   Benson Systems of Northern California in an amount that exceeds $1,500,000.

20        65.    Stoer was harmed as a result of its reliance on the Benson Defendants'

21   misrepresentations.  Stoer's reliance on the Benson Defendants' misrepresentation was

22   a substantial factor in causing Stoer's harm.

23        WHEREFORE, Stoer prays for relief as set forth below.

24                          **THIRD CAUSE OF ACTION**

25              **(Negligent Misrepresentation – Against All Defendants)**

26        66.    Stoer incorporates herein by reference each of the preceding paragraphs

27   as if recited herein in full.

28        67.    From September 2018 to March 2019, Stoer and the Benson Defendants

4522234_2

engaged in negotiations regarding the six Subcontracts.  Sean Anderson, the President and Chief Executive Officer of Stoer, negotiated the six Subcontracts on behalf of Stoer. On information and belief, Shawn Benson, a member of Benson Systems of Northern California and the Director and President of Benson Security Systems, Eric Benson, the Treasurer of Benson Security Systems and the Chief Financial Officer of Benson Systems of Northern California, and Cory Benson, the Secretary of Benson Security Systems, negotiated the six Subcontracts on behalf of the Benson Defendants.  The negotiations occurred telephonically, in writing, and in person at Stoer's San Jose, California headquarters.

68.     During the negotiation and execution of each of the Subcontracts from September 2018 to March 2019, the Benson Defendants made representations to Stoer that Benson Systems of Northern California held a valid California contractor's license. Specifically, the Benson Defendants represented that Benson Systems of Northern California's California contractor's license number was 795362.  That license number was included in each of the written Subcontracts.  The Benson Defendants represented that this fact was true.

69.     The representation regarding Benson Systems of Northern California's license status was false.  Benson Systems of Northern California did not have a valid California contractor license.  Rather, California contractor license number 795362 belonged to Benson Security Systems.

70.     The Benson Defendants had no reasonable grounds for believing the representation regarding Benson Systems of Northern California's contractor's license status was true at the time the Benson Defendants caused Benson Systems of Northern California to enter into the Subcontracts, and when the Benson Defendants represented to Stoer that Benson Systems of Northern California was a duly licensed California contractor.

71.     Despite this, the Benson Defendants intended that Stoer rely on this representation.  The Benson Defendants made the representation to induce Stoer to

enter into the six Subcontracts with Benson Systems of Northern California for the Project.  If Benson Systems of Northern California, completed the six Subcontracts, it would have resulted in a minimum $8,250,000 payment from Stoer to Benson Systems of Northern California, which would then pass through to its parent and alter ego, the Benson Defendants.

72.     Stoer reasonably relied on this representation.  In reliance on the Benson Defendants' representation, Stoer executed the Subcontracts with Benson Systems of Northern California.

73.     Stoer was harmed as a result of its reliance on the Benson Defendants' false representation.  Under the impression that Benson Systems of Northern California held a valid California contractor's license, and was competent and cable of performing the work required under the Subcontracts, Stoer authorized Benson Systems of Northern California to perform construction work and contracting services on the Project.

74.     Stoer paid Benson Systems of Northern California  $6,267,710.99 for its work on the Project.  Stoer has been damaged in this amount, as Benson Systems of Northern California is an unlicensed contractor and is not entitled to payment for unlicensed contract work performed in California pursuant to California Business and Professions Code section 7031(b).

75.     Stoer's reliance on the Benson Defendants' representation regarding Benson Systems of Northern California's license status was a substantial factor in causing Stoer's harm.

76.     Additionally, the Benson Defendants represented to Stoer that they had completed or performed certain construction work under the Subcontracts, thereby warranting payment from Stoer.  The Benson Defendants represented this fact as true by causing Benson Systems of Northern California to invoice Stoer for the work allegedly performed.

77.     The Benson Defendants' representations to Stoer were false because Benson Systems of Northern California did not fully or competently perform construction

1   work under the Subcontracts as alleged in its invoices.  Benson Systems of Northern

2   California was not entitled to receive payment for same.

3         78.    Between September 2018 and September 2020, the Benson Defendants

4   caused Benson Systems of Northern California to engage in a pattern of fraudulently

5   billing Stoer for incomplete work under the false representation that such work was

6   complete.

7         79.    In particular, under the LV Subcontract, the Benson Defendants caused

8   Benson Systems of Northern California to bill Stoer for 60% of the subcontracted work,

9   but Benson Systems of Northern California had only completed 48% of same.  With

10  respect to the Electrical Subcontract, the Benson Defendants caused Benson Systems of

11  Northern California to bill Stoer for 76% of the subcontracted work, but Benson Systems

12  of Northern California had only completed 59% of same.  Regarding the Fire Alarm

13  Subcontract, the Benson Defendants caused Benson Systems of Northern California to

14  bill Stoer for 80% of the subcontracted work, but Benson Systems of Northern California

15  had only completed 66% of same.  As for the Fire Sprinkler Subcontract, the Benson

16  Defendants caused Benson Systems of Northern California to bill Stoer for 91% of the

17  subcontracted work, but Benson Systems of Northern California had only completed 67%

18  of same.  With regard to the HVAC Subcontract, the Benson Defendants caused Benson

19  Systems of Northern California to bill Stoer for 92% of the subcontracted work, but

20  Benson Systems of Northern California had only completed 63% of same.  Finally, with

21  respect to the Plumbing Subcontract, the Benson Defendants caused Benson Systems of

22  Northern California to bill Stoer for 80% of the subcontracted work, but Benson Systems

23  of Northern California had only completed 72% of same.

24        80.    In total, between September 2018 and September 2020, the Benson

25  Defendants knowingly and intentionally caused Benson Systems of Northern California to

26  overbill Stoer for incomplete work by more than $1,500,000.

27        81.    The Benson Defendants had no reasonable grounds for believing the

28  representations in Benson Systems of Northern California's invoices were true at the time

1   the Benson Defendants caused the invoices to be billed to Stoer.

2       82.     The Benson Defendants intended that Stoer rely on the representations.

3       83.     Stoer reasonably relied on the representation and unknowingly paid Benson

4   Systems of Northern California for the incomplete construction work as falsely invoiced

5   by Benson Systems of Northern California in an amount that exceeds $1,500,000.

6       84.     Stoer was harmed as a result of its reliance on the Benson Defendants'

7   misrepresentations.  Stoer's reliance on the Benson Defendants' misrepresentation was

8   a substantial factor in causing Stoer's harm.

9       WHEREFORE, Stoer prays for relief as set forth below.

10   **FOURTH CAUSE OF ACTION**

11   **(Breach of Written Contract – Against All Defendants)**

12       85.     Stoer incorporates herein by reference each of the preceding paragraphs

13   as if recited herein in full.

14       86.     On or about September 24, 2018, Stoer and Benson Systems of Northern

15   California entered into a written Plumbing Subcontract.  Pursuant to the Plumbing

16   Subcontract, Benson Systems of Northern California agreed to furnish all labor,

17   materials, equipment, and other facilities required to perform the scope of work

18   referenced and fully incorporated in the Plumbing Subcontract.  Benson Systems of

19   Northern California also assumed a duty to perform the scope of work in the Plumbing

20   Subcontract in a workmanlike manner and in accordance with applicable standard

21   industry practices.  Benson Systems of Northern California agreed to prosecute its work

22   in a prompt and diligent manner in accordance with Stoer's progress schedule, as set

23   forth in the Plumbing Subcontract, without delaying or hindering Stoer's work, or the work

24   of other subcontractors.  Further, Benson Systems of Northern California agreed to

25   comply with all statutes, codes, regulations, and other applicable laws, and to perform the

26   construction work with the proper licenses and registrations.  Benson Systems of

27   Northern California specifically agreed that it was and at all relevant times would be duly

28   licensed by, and in good standing with, the California Contractors State License Board

4522234_2

("CSLB").

87.     In consideration for Benson Systems of Northern California's work, Stoer agreed to pay Benson Systems of Northern California a specific sum for Benson Systems of Northern California's strict performance of its work in conformance with the terms of the Plumbing Subcontract.  Stoer agreed to pay Benson Systems of Northern California in monthly progress payments for ninety percent of the work Benson Systems of Northern California completed each month.  Once Benson Systems of Northern California completed the construction work in conformity with the Plumbing Subcontract, and once Stoer and the owner of the Project accepted the work, Stoer would make final payment to Benson Systems of Northern California.

88.     Stoer fully performed all the terms and conditions required of it under the Plumbing Subcontract, except any that have been excused.  Specifically, Stoer paid Benson Systems of Northern California for ninety percent of the work Benson Systems of Northern California completed each month, as billed in Benson Systems of Northern California's invoices for the Plumbing Subcontract.

89.     Benson Systems of Northern California breached the Plumbing Subcontract by failing to perform competent and quality construction work that complied with the schedule, scope of work, and budget.  Benson Systems of Northern California also breached the Plumbing Subcontract by overbilling Stoer for work that Benson Systems of Northern California had not yet completed.  Benson Systems of Northern California also breached the Plumbing Subcontract by not having a valid California contractor's license.

90.     As a result of Benson Systems of Northern California's breach of the Plumbing Subcontract, Benson Systems of Northern California had to redo the work, and when such work proved to be insufficient yet again, Stoer was forced to hire new subcontractors to redo Benson Systems of Northern California's unsatisfactory work and finish Benson Systems of Northern California's incomplete work.  Benson Systems of Northern California's breach caused Stoer to fall behind schedule for the Project and also forced Stoer to incur additional, unnecessary costs.

91.     Benson Systems of Northern California's breach of the Plumbing Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary damages according to proof.  Further, Stoer has suffered damage to its reputation due to Benson Systems of Northern California's breach of the Plumbing Subcontract.

92.     On or about October 8, 2018, Stoer and Benson Systems of Northern California entered into a written HVAC Subcontract.  Pursuant to the HVAC Subcontract, Benson Systems of Northern California agreed to furnish all labor, materials, equipment, and other facilities required to perform the scope of work referenced and fully incorporated in the HVAC Subcontract.  Benson Systems of Northern California also assumed a duty to perform the scope of work in the HVAC Subcontract in a workmanlike manner and in accordance with applicable standard industry practices.  Benson Systems of Northern California agreed to prosecute its work in a prompt and diligent manner in accordance with Stoer's progress schedule, as set forth in the HVAC Subcontract, without delaying or hindering Stoer's work, or the work of other subcontractors.  Further, Benson Systems of Northern California agreed to comply with all statutes, codes, regulations, and other applicable laws, and to perform the construction work with the proper licenses and registrations.  Benson Systems of Northern California specifically agreed that it was and at all relevant times would be duly licensed by, and in good standing with, the CSLB.

93.     In consideration for Benson Systems of Northern California's work, Stoer agreed to pay Benson Systems of Northern California a specific sum for Benson Systems of Northern California's strict performance of its work in conformance with the terms of the HVAC Subcontract.  Stoer agreed to pay Benson Systems of Northern California in monthly progress payments for ninety percent of the work Benson Systems of Northern California completed each month.  Once Benson Systems of Northern California completed the construction work in conformity with the HVAC Subcontract, and once Stoer and the owner of the Project accepted the work, Stoer would make final payment to Benson Systems of Northern California.

94.     Stoer fully performed all the terms and conditions required of it under the HVAC Subcontract, except any that have been excused.  Specifically, Stoer paid Benson Systems of Northern California for ninety percent of the work Benson Systems of Northern California completed each month, as billed in Benson Systems of Northern California's invoices for the HVAC Subcontract.

95.     Benson Systems of Northern California breached the HVAC Subcontract by failing to perform competent and quality construction work that complied with the schedule, scope of work, and budget.  Benson Systems of Northern California also breached the HVAC Subcontract by overbilling Stoer for work that Benson Systems of Northern California had not yet completed.  Benson Systems of Northern California also breached the HVAC Subcontract by not having a valid California contractor's license.

96.     As a result of Benson Systems of Northern California's breach of the HVAC Subcontract, Benson Systems of Northern California had to redo the work, and when such work proved to be insufficient yet again, Stoer was forced to hire new subcontractors to redo Benson Systems of Northern California's unsatisfactory work and finish Benson Systems of Northern California's incomplete work.  Benson Systems of Northern California's  breach caused Stoer to fall behind schedule for the Project and also forced Stoer to incur additional, unnecessary costs.

97.     Benson Systems of Northern California's breach of the HVAC Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary damages according to proof.  Further, Stoer has suffered damage to its reputation due to Benson Systems of Northern California's breach of the HVAC Subcontract.

98.     On or about October 8, 2018, Stoer and Benson Systems of Northern California entered into a written Fire Sprinkler Subcontract.  Pursuant to the Fire Sprinkler Subcontract, Benson Systems of Northern California agreed to furnish all labor, materials, equipment, and other facilities required to perform the scope of work referenced and fully incorporated in the Fire Sprinkler Subcontract.  Benson Systems of Northern California also assumed a duty to perform the scope of work in the Fire

1   Sprinkler Subcontract in a workmanlike manner and in accordance with applicable

2   standard industry practices.  Benson Systems of Northern California agreed to prosecute

3   its work in a prompt and diligent manner in accordance with Stoer's progress schedule,

4   as set forth in the Fire Sprinkler Subcontract, without delaying or hindering Stoer's work,

5   or the work of other subcontractors.  Further, Benson Systems of Northern California

6   agreed to comply with all statutes, codes, regulations, and other applicable laws, and to

7   perform the construction work with the proper licenses and registrations.  Benson

8   Systems of Northern California specifically agreed that it was and at all relevant times

9   would be duly licensed by, and in good standing with, the CSLB.

10         99.     In consideration for Benson Systems of Northern California's work, Stoer

11  agreed to pay Benson Systems of Northern California a specific sum for Benson Systems

12  of Northern California's strict performance of its work in conformance with the terms of

13  the Fire Sprinkler Subcontract.  Stoer agreed to pay Benson Systems of Northern

14  California in monthly progress payments for ninety percent of the work Benson Systems

15  of Northern California completed each month.  Once Benson Systems of Northern

16  California completed the construction work in conformity with the Fire Sprinkler

17  Subcontract, and once Stoer and the owner of the Project accepted the work, Stoer

18  would make final payment to  Benson Systems of Northern California.

19         100.    Stoer fully performed all the terms and conditions required of it under the

20  Fire Sprinkler Subcontract, except any that have been excused.  Specifically, Stoer paid

21  Benson Systems of Northern California for ninety percent of the work Benson Systems of

22  Northern California completed each month, as billed in Benson Systems of Northern

23  California's invoices for the Fire Sprinkler Subcontract.

24         101.    Benson Systems of Northern California breached the Fire Sprinkler

25  Subcontract by failing to perform competent and quality construction work that complied

26  with the schedule, scope of work, and budget.  Benson Systems of Northern California

27  also breached the Fire Sprinkler Subcontract by overbilling Stoer for work that Benson

28  Systems of Northern California had not yet completed.  Benson Systems of Northern

1   California also breached the Fire Sprinkler Subcontract by not having a valid California

2   contractor's license.

3       102.   As a result of Benson Systems of Northern California's breach of the Fire

4   Sprinkler Subcontract, Benson Systems of Northern California had to redo the work, and

5   when such work proved to be insufficient yet again, Stoer was forced to hire new

6   subcontractors to redo Benson Systems of Northern California's unsatisfactory work and

7   finish Benson Systems of Northern California's incomplete work.  Benson Systems of

8   Northern California's breach caused Stoer to fall behind schedule for the Project and also

9   forced Stoer to incur additional, unnecessary costs.

10       103.   Benson Systems of Northern California's breach of the Fire Sprinkler

11   Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary

12   damages according to proof.  Further, Stoer has suffered damage to its reputation due to

13   Benson Systems of Northern California's breach of the Fire Sprinkler Subcontract.

14       104.   On or about October 9, 2018, Stoer and Benson Systems of Northern

15   California entered into a written Fire Alarm Subcontract.  Pursuant to the Fire Alarm

16   Subcontract, Benson Systems of Northern California agreed to furnish all labor,

17   materials, equipment, and other facilities required to perform the scope of work

18   referenced and fully incorporated in the Fire Alarm Subcontract.  Benson Systems of

19   Northern California also assumed a duty to perform the scope of work in the Fire Alarm

20   Subcontract in a workmanlike manner and in accordance with applicable standard

21   industry practices.  Benson Systems of Northern California agreed to prosecute its work

22   in a prompt and diligent manner in accordance with Stoer's progress schedule without

23   delaying or hindering Stoer's work, or the work of other subcontractors.  Further, Benson

24   Systems of Northern California agreed to comply with all statutes, codes, regulations, and

25   other applicable laws, and to perform the construction work with the proper licenses and

26   registrations.  Benson Systems of Northern California specifically agreed that it was and

27   at all relevant times would be duly licensed by, and in good standing with, the CSLB.

28       105.   In consideration for Benson Systems of Northern California's work, Stoer

agreed to pay Benson Systems of Northern California a specific sum for Benson Systems of Northern California's strict performance of its work in conformance with the terms of the Fire Alarm Subcontract.  Stoer agreed to pay Benson Systems of Northern California in monthly progress payments for ninety percent of the work Benson Systems of Northern California completed each month.  Once Benson Systems of Northern California completed the construction work in conformity with the Fire Alarm Subcontract, and once Stoer and the owner of the Project accepted the work, Stoer would make final payment to Benson Systems of Northern California.

106.    Stoer fully performed all the terms and conditions required of it under the Fire Alarm Subcontract, except any that have been excused.  Specifically, Stoer paid Benson Systems of Northern California for ninety percent of the work Benson Systems of Northern California completed each month, as billed in Benson Systems of Northern California's invoices for the Fire Alarm Subcontract.

107.    Benson Systems of Northern California breached the Fire Alarm Subcontract by failing to perform competent and quality construction work that complied with the schedule, scope of work, and budget.  Benson Systems of Northern California also breached the Fire Alarm Subcontract by overbilling Stoer for work that Benson Systems of Northern California had not yet completed.  Benson Systems of Northern California also breached the Fire Alarm Subcontract by not having a valid California contractor's license.

108.    As a result of Benson Systems of Northern California's breach of the Fire Alarm Subcontract, Benson Systems of Northern California had to redo the work, and when such work proved to be insufficient yet again, Stoer was forced to hire new subcontractors to redo Benson Systems of Northern California's unsatisfactory work and finish Benson Systems of Northern California's incomplete work.  Benson Systems of Northern California's breach caused Stoer to fall behind schedule for the Project and also forced Stoer to incur additional, unnecessary costs.

109.    Benson Systems of Northern California's breach of the Fire Alarm

1   Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary

2   damages according to proof.  Further, Stoer has suffered damage to its reputation due to

3   Benson Systems of Northern California's breach of the Fire Alarm Subcontract.

4        110.   On or about October 9, 2018, Stoer and Benson Systems of Northern

5   California entered into a written LV Subcontract.  Pursuant to the LV Subcontract,

6   Benson Systems of Northern California agreed to furnish all labor, materials, equipment,

7   and other facilities required to perform the scope of work referenced and fully

8   incorporated in the LV Subcontract.  Benson Systems of Northern California also

9   assumed a duty to perform the scope of work in the LV Subcontract in a workmanlike

10   manner and in accordance with applicable standard industry practices.  Benson Systems

11   of Northern California agreed to prosecute its work in a prompt and diligent manner in

12   accordance with Stoer's progress schedule, as set forth in the LV Subcontract, without

13   delaying or hindering Stoer's work, or the work of other subcontractors.  Further, Benson

14   Systems of Northern California agreed to comply with all statutes, codes, regulations, and

15   other applicable laws, and to perform the construction work with the proper licenses and

16   registrations.  Benson Systems of Northern California specifically agreed that it was and

17   at all relevant times would be duly licensed by, and in good standing with, the CSLB.

18        111.   In consideration for Benson Systems of Northern California's work, Stoer

19   agreed to pay Benson Systems of Northern California a specific sum for Benson Systems

20   of Northern California's strict performance of its work with respect to the LV Subcontract.

21   Stoer agreed to pay Benson Systems of Northern California in monthly progress

22   payments for ninety percent of the work Benson Systems of Northern California

23   completed each month.  Once Benson Systems of Northern California completed the

24   construction work in conformity with the LV Subcontract, and once Stoer and the owner

25   of the Project accepted the work, Stoer would make final payment to  Benson Systems of

26   Northern California.

27        112.   Stoer fully performed all the terms and conditions required of it under the LV

28   Subcontract, except any that have been excused.  Specifically, Stoer paid Benson

1 Systems of Northern California for ninety percent of the work Benson Systems of
2 Northern California completed each month, as billed in Benson Systems of Northern
3 California's invoices for the LV Subcontract.

4    113.    Benson Systems of Northern California breached the LV Subcontract by
5 failing to perform competent and quality construction work that complied with the
6 schedule, scope of work, and budget.  Benson Systems of Northern California also
7 breached the LV Subcontract by overbilling Stoer for work that Benson Systems of
8 Northern California had not yet completed.  Benson Systems of Northern California also
9 breached the LV Subcontract by not having a valid California contractor's license.

10    114.    As a result of Benson Systems of Northern California's breach of the LV
11 Subcontract, Benson Systems of Northern California had to redo the work, and when
12 such work proved to be insufficient yet again, Stoer was forced to hire new
13 subcontractors to redo Benson Systems of Northern California's unsatisfactory work and
14 finish Benson Systems of Northern California's incomplete work.  Benson Systems of
15 Northern California's breach caused Stoer to fall behind schedule for the Project and also
16 forced Stoer to incur additional, unnecessary costs.

17    115.    Benson Systems of Northern California's breach of the LV Subcontract
18 substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary damages
19 according to proof.  Further, Stoer has suffered damage to its reputation due to Benson
20 Systems of Northern California's breach of the LV Subcontract.

21    116.    On or about October 17, 2018, Stoer and Benson Systems of Northern
22 California entered into a written Electrical Subcontract.  Pursuant to the Electrical
23 Subcontract, Benson Systems of Northern California agreed to furnish all labor,
24 materials, equipment, and other facilities required to perform the scope of work
25 referenced and fully incorporated in the Electrical Subcontract.  Benson Systems of
26 Northern California also assumed a duty to perform the scope of work in a workmanlike
27 manner and in accordance with applicable standard industry practices.  Benson Systems
28 of Northern California agreed to prosecute its work in a prompt and diligent manner in

1  accordance with Stoer's progress schedule, as set forth in the Electrical Subcontract,

2  without delaying or hindering Stoer's work, or the work of other subcontractors.  Further,

3  Benson Systems of Northern California agreed to comply with all statutes, codes,

4  regulations, and other applicable laws, and to perform the construction work with the

5  proper licenses and registrations.  Benson Systems of Northern California specifically

6  agreed that it was and at all relevant times would be duly licensed by, and in good

7  standing with, the CSLB.

8      117.   In consideration for Benson Systems of Northern California's work, Stoer

9  agreed to pay Benson Systems of Northern California a specific sum for Benson Systems

10 of Northern California's strict performance of its work with respect to the Electrical

11 Subcontract.  Stoer agreed to pay Benson Systems of Northern California in monthly

12 progress payments for ninety percent of the work Benson Systems of Northern California

13 completed each month.  Once Benson Systems of Northern California completed the

14 construction work in conformity with the Electrical Subcontract, and once Stoer and the

15 owner of the Project accepted the work, Stoer would make final payment to Benson

16 Systems of Northern California.

17     118.   Stoer fully performed all the terms and conditions required of it under the

18 Electrical Subcontract, except any that have been excused.  Specifically, Stoer paid

19 Benson Systems of Northern California for ninety percent of the work Benson Systems of

20 Northern California completed each month, as billed in Benson Systems of Northern

21 California's invoices for the Electrical Subcontract.

22     119.   Benson Systems of Northern California breached the Electrical Subcontract

23 by failing to perform competent and quality construction work that complied with the

24 schedule, scope of work, and budget.  Benson Systems of Northern California also

25 breached the Electrical Subcontract by overbilling Stoer for work that Benson Systems of

26 Northern California had not yet completed.  Benson Systems of Northern California also

27 breached the Electrical Subcontract by not having a valid California contractor's license.

28     120.   As a result of Benson Systems of Northern California's breach of the

1   Electrical Subcontract, Benson Systems of Northern California had to redo the work, and

2   when such work proved to be insufficient yet again, Stoer was forced to hire new

3   subcontractors to redo Benson Systems of Northern California's unsatisfactory work and

4   finish Benson Systems of Northern California's incomplete work.  Benson Systems of

5   Northern California's breach caused Stoer to fall behind schedule for the Project and also

6   forced Stoer to incur additional, unnecessary costs.

7        121.   Benson Systems of Northern California's breach of the Electrical

8   Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary

9   damages according to proof.  Further, Stoer has suffered damage to its reputation due to

10   Benson Systems of Northern California's breach of the Electrical Subcontract.

11        122.   Benson Defendants have never had, and do not have now, a genuine and

12   separate corporate existence apart from Benson Systems of Northern California.  The

13   Benson Defendants and Benson Systems of Northern California acted as a single

14   enterprise with a unity of interest, common business purpose, and unity of ownership

15   such that the separate corporate personalities are merged and indistinguishable.  Benson

16   Systems of Northern California is, and at all times mentioned herein was, a shell

17   company through which the Benson Defendants conducted business in California.

18   Benson Systems of Northern California has in fact been used and exists for the sole

19   purpose of enabling the Benson Defendants to wrongfully transact a portion of their

20   business under an alternate corporate guise and as a conduit for a single venture.

21        123.   The Benson Defendants, as the parent and alter ego of Benson Systems of

22   Northern California, have been and are conducting, managing, and controlling the affairs

23   of Benson Systems of Northern California with respect to Stoer's claims in this Complaint,

24   as if Benson Systems of Northern California was their own business.  The Benson

25   Defendants have used the separate corporate identity of Benson Systems of Northern

26   California as a shell company for the purpose of unjustly attempting to shield itself from

27   prospective liability.  The Benson Defendants and Benson Systems of Northern California

28   are, and at all times mentioned herein were, acting as a single enterprise.  The Benson

1  Defendants are liable for Benson Systems of Northern California's breach of the six

2  written Subcontracts.

3      WHEREFORE, Stoer prays for relief as set forth below.

4                    **FIFTH CAUSE OF ACTION**

5                 **(Negligence – Against All Defendants)**

6      124.  Stoer incorporates herein by reference each of the preceding paragraphs

7  as if recited herein in full.

8      125.  By causing its subsidiary and alter ego, Benson Systems of Northern

9  California, to enter into the Subcontracts, the Benson Defendants assumed a duty of

10 reasonable care to ensure that Benson Systems of Northern California performed the

11 construction work specified in the Subcontracts, which includes competently and timely

12 completing same, as well as completing the construction work in accordance with the

13 scopes of and budget work identified in each Subcontract.

14     126.  The Benson Defendants breached the duty of reasonable care by failing to

15 cause its subsidiary and alter ego, Benson Systems of Northern California, to provide

16 competent construction work, failing to complete such construction work within the

17 schedules and scopes of work specified by the Subcontracts, and failing to be duly

18 licensed by the CSLB.

19     127.  As a result of the Benson Defendants' breach of the duty of reasonable

20 care, Stoer suffered reputational and monetary damages according to proof.

21     128.  But for the Benson Defendants' breach of the duty of reasonable care owed

22 to Stoer, Stoer would not have suffered damages.

23     WHEREFORE, Stoer prays for relief as set forth below.

24                    **SIXTH CAUSE OF ACTION**

25 **(Violation of Business and Professions Code §17200 – Against All Defendants)**

26     129.  Stoer incorporates herein by reference each of the preceding paragraphs

27 as if recited herein in full.

28     130.  The Benson Defendants engaged in unlawful, fraudulent, and/or unfair

1   business practices when it fraudulently represented to Stoer that its subsidiary and alter

2   ego, Benson Systems of Northern California, had a valid California contractor's license.

3   The Benson Defendants made this misrepresentation to Stoer to induce Stoer to execute

4   the Subcontracts with Benson Systems of Northern California so that the Benson

5   Defendants could collect fees for Benson Systems of Northern California's unlawful and

6   unauthorized construction work and subcontracting services performed on the Project.

7        131.    The Benson Defendants also engaged in unlawful, fraudulent, and/or unfair

8   business practices when it fraudulently billed Stoer for work not yet performed pursuant

9   to the Subcontracts.   The Benson Defendants engaged in fraudulent billing practices

10   solely for their personal gain, at the exclusion of Stoer.

11        132.    As a result of the Benson Defendants' unlawful, fraudulent, and/or unfair

12   business practices, Stoer has suffered monetary damages according to proof.

13        WHEREFORE, Stoer prays for relief as set forth below.

14             **SEVENTH CAUSE OF ACTION**

15     **(Breach of the Covenant of Good Faith and Fair Dealing – Against All Defendants)**

16        133.    Stoer incorporates herein by reference each of the preceding paragraphs

17   as if recited herein in full.

18        134.    On or about September 24, 2018, the Benson Defendants induced Stoer to

19   enter into a written Plumbing Subcontract with their subsidiary and alter ego, Benson

20   Systems of Northern California.

21        135.    On or about October 8, 2018, the Benson Defendants induced Stoer to

22   enter into a written HVAC Subcontract and Fire Sprinkler Subcontract with their

23   subsidiary and alter ego, Benson Systems of Northern California.

24        136.    On or about October 9, 2018,  the Benson Defendants induced Stoer to

25   enter into a written Fire Alarm Subcontract and a Low Voltage Subcontract with their

26   subsidiary and alter ego, Benson Systems of Northern California.

27        137.    On or about October 17, 2018, the Benson Defendants induced Stoer to

28   enter into a written Electrical Subcontract with their subsidiary and alter ego, Benson

1  Systems of Northern California.

2       138.    Stoer fully performed all the terms and conditions required of it under the

3  Subcontracts, except any that have been excused.

4       139.    All conditions required for Benson Systems of Northern California's

5  performance of the Subcontracts have occurred.

6       140.    The Benson Defendants unfairly interfered with Stoer's right to receive the

7  benefits of the Subcontracts when the Benson Defendants caused Benson Systems of

8  Northern California to breach the Subcontracts, fraudulently bill Stoer for same, and when

9  the Benson Defendants fraudulently misrepresented that Benson Systems of Northern

10  California was authorized and duly licensed by the CSLB to perform construction work

11  and subcontracting services on the Project.

12       141.    As a result, Stoer suffered reputational and monetary damages according to

13  proof.

14       WHEREFORE, Stoer prays for relief as set forth below.

15  **EIGHTH CAUSE OF ACTION**

16  **(Intentional Interference With Contractual Relations – Against All Defendants)**

17       142.    Stoer incorporates herein by reference each of the preceding paragraphs

18  as if recited herein in full.

19       143.    Stoer had a construction contract (the "Main Contract") with Lodging

20  Dynamics Hospitality Group regarding the construction of the Project, a new hotel in

21  Milpitas, California.

22       144.    The Benson Defendants knew of this contract.  The Benson Defendants

23  induced Stoer to enter into six Subcontracts with their subsidiary and alter ego, Benson

24  Systems of Northern California, for construction work on the Project.

25       145.    The Benson Defendants' conduct, including by allowing their subsidiary and

26  alter ego, Benson Systems of Northern California, to enter into the Subcontracts without

27  being duly licensed by the CSLB to perform construction work in California and,

28  notwithstanding the forgoing, allowing Benson Systems of Northern California to perform

1  incompetent and incomplete construction work on the Project, thereby preventing Stoer's

2  performance or making Stoer's performance of the Main Contract more expensive or

3  difficult.

4        146.   The Benson Defendants intended to disrupt Stoer's performance of the

5  Main Contract, or knew that disruption of performance was certain or substantially certain

6  to occur.

7        147.   As a result of the Benson Defendants' conduct, Stoer was harmed.

8        148.   The Benson Defendants' conduct was a substantial factor in causing

9  Stoer's harm.

10        WHEREFORE, Stoer prays for relief as set forth below.

11  **NINTH CAUSE OF ACTION**

12  **(Intentional Interference With Prospective Economic Relations – All Defendants)**

13        149.   Stoer incorporates herein by reference each of the preceding paragraphs

14  as if recited herein in full.

15        150.   Stoer and the owner of the Project, Lodging Dynamics Hospitality Group,

16  were in an economic relationship that would have resulted in an economic benefit to

17  Stoer.

18        151.   The Benson Defendants knew of Stoer and Lodging Dynamics Hospitality

19  Group's relationship.

20        152.   The Benson Defendants engaged in wrongful conduct, by allowing their

21  subsidiary and alter ego, Benson Systems of Northern California, to enter into the

22  Subcontracts without being duly licensed by the CSLB to perform construction work in

23  California and allowing Benson Systems of Northern California to perform incompetent

24  and incomplete construction work on the Project.

25        153.   By engaging in this wrongful conduct, the Benson Defendants intended to

26  disrupt the relationship between Stoer and Lodging Dynamics Hospitality Group, or knew

27  that disruption of the relationship was certain or substantially certain to occur.

28        154.   Stoer and Lodging Dynamics Hospitality Group's relationship was disrupted.

155.   As a result of the Benson Defendants' conduct, Stoer was harmed.

156.   The Benson Defendants' wrongful conduct was a substantial factor in causing Stoer's harm.

WHEREFORE, Stoer prays for relief as set forth below.

## TENTH CAUSE OF ACTION

### (Negligent Interference With Prospective Economic Relations – Against All Defendants)

157.   Stoer incorporates herein by reference each of the preceding paragraphs as if recited herein in full.

158.   Stoer and the owner of the Project, Lodging Dynamics Hospitality Group, were in an economic relationship that would have resulted in an economic benefit to Stoer.

159.   The Benson Defendants knew or should have known of Stoer and Lodging Dynamics Hospitality Group's relationship.

160.   The Benson Defendants knew or should have known that Stoer and Lodging Dynamics Hospitality Group's relationship would be disrupted if the Benson Defendants failed to act with reasonable care.

161.   The Benson Defendants failed to act with reasonable care by engaging in wrongful conduct, including by inducing Stoer to enter into six Subcontracts with their subsidiary and alter ego, Benson Systems of Northern California, which was not duly licensed by the CSLB to perform construction work in California and, who performed incompetent and incomplete construction work on the Project.

162.   Stoer and Lodging Dynamics Hospitality Group's relationship was disrupted as a result of the Benson Defendants' wrongful conduct.

163.   As a result of the Benson Defendants' conduct, Stoer was harmed.

164.   The Benson Defendants' wrongful conduct was a substantial factor in causing Stoer's harm.

WHEREFORE, Stoer prays for relief as set forth below.

1

## **PRAYER FOR RELIEF**

2   WHEREFORE, Stoer prays for relief as follows:

3   1.   For disgorgement of all fees paid to the Benson Systems of Northern

4   California and the Benson Defendants in connection with the six Subcontracts;

5   2.   For general damages according to proof;

6   3.   For special damages according to proof;

7   4.   For punitive damages;

8   5.   For interest at the legal rate;

9   6.   For attorney fees and costs; and

10   7.   For such other and further relief as the Court may deem just and proper.

11   DATED:  August 17, 2021          HOGE, FENTON, JONES & APPEL, INC.

12

13                                By: _____

14                                    Eugene Ashley
                                     Cara Mae Acibo
15                                    Emma B. Lloyd
                                     Attorneys for Plaintiff STOER CONSTRUCTION,
16                                    INC., a California corporation

17

18

19

20

21

22

23

24

25

26

27

28

R. Fleming

**Electronically Filed**
**by Superior Court of CA,**
**County of Santa Clara,**
**on 10/20/2021 2:49 PM**
**Reviewed By: R. Fleming**
**Case #21CV387612**
**Envelope: 7504092**

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Eugene Ashley (SBN 171885) / Cara Mae Acibo (SBN 322303) / Emma B. Lloyd (SBN 322374)
Hoge Fenton Jones & Appel, Inc.
55 S. Market Street, Suite 900
San Jose, CA 95113-2324

TELEPHONE NO.: (408) 287-9501          FAX NO. *(Optional)* (408) 287-2583

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Plaintiff STOER CONSTRUCTION, INC.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: 191 N. First Street
CITY AND ZIP CODE: San Jose, 95113
BRANCH NAME: Downtown Superior Courthouse

PLAINTIFF/PETITIONER: STOER CONSTRUCTION, INC.

DEFENDANT/RESPONDENT: BENSON SECURITY SYSTEMS, INC. et al.

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | CASE NUMBER: **21CV387612** |
| | Ref. No or File No.: **202896** |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents):* Civil Lawsuit Notice

3. a. Party served *(specify name of party as shown on documents served):*

   Benson Security Systems, Inc.

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Lupe Iniguez (Statutory Agent) c/o Hermillo Iniguez, an Authorized Representative of Iniguez Law, PA

4. Address where the party was served:
   Iniguez Law, PA, 2198 E. Camelback Road, Suite 350, Phoenix, AZ 85016

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* October 7, 2021 (2) at *(time):* 12:34 p.m.
   b. ☐ **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*          or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: STOER CONSTRUCTION, INC. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: BENSON SECURITY SYSTEMS, INC. et al. | 21CV387612 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*            (2) *from (city):*

   (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. (*Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☑ On behalf of *(specify):* **Defendant BENSON SECURITY SYSTEMS, INC.**
   under the following Code of Civil Procedure section:

   ☑ 416.10 (corporation)                    ☐ 415.95 (business organization, form unknown)
   ☐ 416.20 (defunct corporation)            ☐ 416.60 (minor)
   ☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
   ☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)
   ☐ 416.50 (public entity)                  ☐ 415.46 (occupant)
                                             ☐ other:

7. **Person who served papers**
   a. Name: **Wayne Holcomb**
   b. Address: **1030 E. Geneva Drive, Tempe, AZ 85282**
   c. Telephone number: **(480) 217-0933**
   d. The fee for service was: $ **110.00**
   e. I am:
      (1) ☑ not a registered California process server. Maricopa County Officer of the Court Card #8930
      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
      (3) ☐ a registered California process server:
         (i) ☐ owner ☐ employee ☐ independent contractor.
         (ii) Registration No.:
         (iii) County:

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **October 18, 2021**

_____
**Wayne Holcomb**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE )

POS-010 [Rev. January 1, 2007]          **PROOF OF SERVICE OF SUMMONS**          Page 2 of 2

POS-010

Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 10/20/2021 2:49 PM
Reviewed By: R. Fleming
Case #21CV387612
Envelope: 7504092

FOR COURT USE ONLY

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address)*:
Eugene Ashley (SBN 171885) / Cara Mae Acibo (SBN 322303) / Emma B. Lloyd (SBN 322374)
Hoge Fenton Jones & Appel, inc.
55 S. Market Street, Suite 900
San Jose, CA 95113-2324

TELEPHONE NO. (408) 287-9501     FAX NO. *(Optional)* (408) 287-2583
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)* Plaintiff STOER CONSTRUCTION, INC.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
STREET ADDRESS 191 N. First Street
MAILING ADDRESS 191 N. First Street
CITY AND ZIP CODE San Jose, 95113
BRANCH NAME Downtown Superior Courthouse

PLAINTIFF/PETITIONER: STOER CONSTRUCTION, INC.

DEFENDANT/RESPONDENT: BENSON SECURITY SYSTEMS, INC. et al.

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | CASE NUMBER 21CV387612 |
| | Ref. No. or File No. 202896 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents)*: Civil Lawsuit Notice

3. a. Party served *(specify name of party as shown on documents served)*:
      **Shawn Benson**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      **Lupe Iniguez (Statutory Agent) c/o Hermillo Iniguez, an Authorized Representative of Iniguez Law, PA**

4. Address where the party was served: **Iniguez Law, PA, 2198 E. Camelback Road, Suite 350, Phoenix, AZ 85016**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: October 7, 2021 (2) at *(time)*: 12:34 p.m.
   b. ☐ **by substituted service.** On *(date)*:          at *(time)*:          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:          from *(city)*:          or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: STOER CONSTRUCTION, INC. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: BENSON SECURITY SYSTEMS, INC. et al. | 21CV387612 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*         (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name: **Wayne Holcomb**
  b. Address: 1030 E. Geneva Drive, Tempe, AZ 85282
  c. Telephone number: (480) 217-0933
  d. The fee for service was: $ 110.00
  e. I am:
    (1) ☑ not a registered California process server. Maricopa County Officer of the Court Card #8930
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: October 18, 2021

      **Wayne Holcomb**                 ▶
  (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)      (SIGNATURE)

R. Fleming

**Electronically Filed**
by Superior Court of CA,
County of Santa Clara,
on 10/20/2021 2:49 PM
Reviewed By: R. Fleming
Case #21CV387612
Envelope: 7504092

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br>Eugene Ashley (SBN 171885) / Cara Mae Acibo (SBN 322303) / Emma B. Lloyd (SBN 322374)<br>Hoge Fenton Jones & Appel, Inc<br>55 S. Market Street, Suite 900<br>San Jose, CA 95113-2324<br>TELEPHONE NO: (408) 287-9501    FAX NO *(Optional)*: (408) 287-2583<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiff STOER CONSTRUCTION, INC. | |
| --- | --- |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA<br>STREET ADDRESS: 191 N. First Street<br>MAILING ADDRESS: 191 N. First Street<br>CITY AND ZIP CODE: San Jose, 95113<br>BRANCH NAME: Downtown Superior Courthouse | |
| PLAINTIFF/PETITIONER: STOER CONSTRUCTION, INC.<br><br>DEFENDANT/RESPONDENT: BENSON SECURITY SYSTEMS, INC. et al. | CASE NUMBER:<br>21CV387612 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.<br>202896 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents)*:  Civil Lawsuit Notice

3. a. Party served *(specify name of party as shown on documents served)*:
   **Eric Benson**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   **Lupe Iniguez (Statutory Agent) c/o Hermillo Iniguez, an Authorized Representative of Iniguez Law, PA**

4. Address where the party was served:
   **Iniguez Law, PA, 2198 E. Camelback Road, Suite 350, Phoenix, AZ 85016**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **October 7, 2021** (2) at *(time)*: **12:34 p.m.**
   b. ☐ **by substituted service.** On *(date)*:            at *(time)*:          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:            from *(city)*:            or ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
| --- | --- | --- |

| PLAINTIFF/PETITIONER: STOER CONSTRUCTION, INC. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: BENSON SECURITY SYSTEMS, INC. et al. | 21CV387612 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                     (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)           ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)       ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                                ☐ other:

7. **Person who served papers**
  a. Name: Wayne Holcomb
  b. Address: 1030 E. Geneva Drive, Tempe, AZ 85282
  c. Telephone number: (480) 217-0933
  d. The fee for service was: $ 110.00
  e. I am:
    (1) ☑ not a registered California process server. Maricopa County Officer of the Court Card #8930
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: October 18, 2021

Wayne Holcomb                   ▶ _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)     (SIGNATURE )

21CV387612
Santa Clara – Civil

R. Fleming

about:blank

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 10/18/2021 2:49 PM
Reviewed By: R. Fleming
Case #21CV387612
Envelope: 7504092**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Eugene Ashley (SBN 171865) / Cara Mae Acibo (SBN 322303) / Emma D. Lloyd (SBN 322374)
Hoge Fenton Jones & Appel, Inc
55 S. Market Street, Suite 900
San Jose, CA 95113-2374

TELEPHONE NO.  (408) 287-9501          FAX NO. *(Optional)*  (408) 287-2583
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*  Plaintiff STOER CONSTRUCTION, INC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS  191 N. First Street
MAILING ADDRESS  191 N. First Street
CITY AND ZIP CODE  San Jose, 95113
BRANCH NAME  Downtown Superior Courthouse

| | |
|---|---|
| PLAINTIFF/PETITIONER: STOER CONSTRUCTION, INC. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: BENSON SECURITY SYSTEMS, INC. et al. | 21CV387612 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No. 202896 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☐ other *(specify documents)*:  Civil Lawsuit Notice

3. a. Party served *(specify name of party as shown on documents served)*:
      Cory Benson

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      Lupe Iniguez (Statutory Agent) c/o Hermillo Iniguez, an Authorized Representative of Iniguez Law, PA

4. Address where the party was served:
   Iniguez Law, PA, 2198 E. Camelback Road, Suite 350, Phoenix, AZ 85016

5. I served the party *(check proper box)*
   a. ☑ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: October 7, 2021 (2) at *(time)*: 12:34 p.m.
   b. ☐ by substituted service. On *(date)*:                at *(time)*:           I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:           from *(city)*:                 or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure § 417.10

1 of 2

10/18/2021, 4:38 PM

| PLAINTIFF/PETITIONER: STOER CONSTRUCTION, INC. | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: BENSON SECURITY SYSTEMS, INC. et al. | 21CV387612 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                         (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)          ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)           ☐ 415.46 (occupant)
                                   ☐ other:

7. **Person who served papers**
  a. Name: Wayne Holcomb
  b. Address: 1030 E. Geneva Drive, Tempe, AZ 85282
  c. Telephone number: (480) 217-0933
  d. The fee for service was: $ 110.00
  e. I am:
    (1) ☑ not a registered California process server. Maricopa County Officer of the Court Card #8930
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner  ☐ employee  ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: October 18, 2021

Wayne Holcomb _____     ▶ _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)         (SIGNATURE)