Robert C. Williams – 033213
rwilliams@gustlaw.com
Séan P. O'Brien – 010540
spobrien@gustlaw.com
GUST ROSENFELD P.L.C.
One East Washington, Suite 1600
Phoenix, Arizona 85004-2553
Phone: (602) 257-7989
Fax: (602) 254-4878

Eugene Ashley
CA Bar No. 171885 (Admitted Pro Hac Vice)
eugene.ashley@hogefenton.com
Dennis S. Zell
CA Bar No. 178061 (Admitted Pro Hac Vice)
dennis.zell@hogefenton.com
Emma B. Lloyd
CA Bar No. 322374 (Admitted Pro Hac Vice)
emma.lloyd@hogefenton.com
HOGE, FENTON, JONES & APPEL, INC.
55 South Market Street, Suite 900
San Jose, California 95113-2324
Phone: (408) 287-9501
Fax: (408) 287-2583

Attorneys for Plaintiff
Stoer Construction, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stoer Construction, Inc., a California Corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>Benson Security Systems, Inc., an Arizona Corporation; Shawn Benson, an individual; Eric Benson, an individual; Cory Benson, an individual; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. CV-22-00400-PHX-SMB<br><br>**PLAINTIFF STOER CONSTRUCTION, INC.'S FIRST AMENDED COMPLAINT**<br><br>**(DEMAND FOR JURY TRIAL)** |

Plaintiff Stoer Construction, Inc., a California corporation ("Stoer"), alleges as follows:

1. Stoer is a corporation, organized under the laws of, and authorized to do business in, the State of California. Stoer maintains its principal place of business at 1800 Hamilton Avenue, Suite 130, San Jose, California 95125. Stoer is, and at all times herein mentioned was, a contractor licensed under the laws of the State of California, with California contractor's license number 1000445.

2. Stoer is informed and believes, and thereon alleges, that Defendant Benson Security Systems, Inc. ("Benson Security Systems") is a corporation organized and existing under the laws of the State of Arizona, with a principal place of business at 2065 W. Obispo Avenue, Suite 101, Gilbert, Arizona 85233. Stoer is further informed and believes, and thereon alleges, that Benson Security Systems is a contractor licensed under the laws of the State of California, with California license number 795362 and having minimum contacts with the State of California. Stoer is further informed and believes, and thereon alleges that Benson Security Systems, is now, and at all times mentioned herein was, the majority owner and/or member of Benson Systems of Northern California, LLC ("Benson Systems of Northern California"), a California limited liability company with its principal place of business at 2065 W. Obispo Avenue, Suite 101, Gilbert, Arizona 85233, with a soon to be closed bankruptcy action before the United States Bankruptcy Court for the District of Arizona, case number 2:21-bk-04680-MCW, filed June 16, 2021. Stoer is further informed and believes, and thereon alleges that Benson Security Systems is now, and at all times mentioned herein was, the parent and managing entity of Benson Systems of Northern California.

3. Stoer is informed and believes, and thereon alleges, that Defendant Shawn Benson is an individual residing in the State of Arizona. Stoer is further informed and believes, and thereon alleges, that Shawn Benson is the President, Founder and Chief Executive Officer of Benson Security Systems. Stoer is further informed and believes, and thereon alleges, that Shawn Benson is a director of Benson Security Systems.

4.      Stoer is further informed and believes, and thereon alleges, that at all times relevant herein, Shawn Benson was also the President and Chief Executive Officer of Benson Systems of Northern California responsible for top level supervision, management and operations of Benson Systems of Northern California.

5.      Stoer is informed and believes, and thereon alleges, that Defendant Eric Benson is an individual residing in the State of Arizona.  Stoer is further informed and believes, and thereon alleges, that Eric Benson is the Chief Financial Officer and Treasurer of Benson Security Systems.

6.      Stoer is further informed and believes, and thereon alleges, that at all times relevant herein, Eric Benson was also the Chief Financial Officer of Benson Systems of Northern California responsible for sales, accounting and finances of Benson Systems of Northern California.

7.      Stoer is informed and believes, and thereon alleges, that Defendant Cory Benson is an individual residing in the State of Arizona.  Stoer is further informed and believes, and thereon alleges, that Cory Benson is the Director of Operations and Secretary of Benson Security Systems.

8.      Stoer is further informed and believes, and thereon alleges, that at all times relevant herein, Cory Benson was also the Director of Operations of Benson Systems of Northern California responsible for operations, including, but not limited to, field operations of Benson Systems of Northern California.

9.      The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1 through 50, are unknown to Stoer, who therefore sues said Defendants by such fictitious business names.  Stoer will ask for leave to amend this Complaint to show their true names and capacities when they have been ascertained.  Stoer is informed and believes, and thereon alleges, that each fictitiously named Defendant is responsible in some manner for the damages sustained by Stoer as hereinafter alleged.

10.      Benson Security Systems, Shawn Benson, Eric Benson, Cory Benson, and

DOES 1 through 50 are referred collectively herein as the "Benson Defendants."  On information and belief, at all times mentioned herein, each of the Benson Defendants was the agent, servant, employee, partner, joint venturer, and/or co-conspirator of each of the remaining Benson Defendants.  In so engaging in the conduct hereinafter alleged, each of the Benson Defendants was acting within the course and scope of such agency, employment, partnership, joint venture, conspiracy, and with the knowledge and consent or ratification of each of the remaining Benson Defendants.  Also in so engaging in the conduct hereinafter alleged, each of the Benson Defendants were engaged in a conspiracy such that each of the Benson Defendants had knowledge of and agreed to both the objective and the course of action that resulted in injury to Stoer, wrongful acts were committed by the Benson Defendants and each of them pursuant to that agreement, and there was resulting damage to Stoer.  Also in so engaging in the conduct hereinafter alleged, the Benson Defendants aided and abetted each other, giving substantial assistance to each other in performance of their wrongful conduct, with actual knowledge of the wrongs that each of the Benson Defendants substantially assisted.

11.     Stoer is informed and believes, and thereon alleges, that Benson Systems of Northern California is now, and at all times mentioned herein was, a subsidiary of Defendant Benson Security Systems.

12.     Stoer is informed and believes, and thereon alleges, that Benson Systems of Northern California never had, and does not have now, a genuine and separate corporate existence apart from Defendant Benson Security Systems.

13.     Stoer is informed and believes, and thereon alleges, that Benson Systems of Northern California and Defendant Benson Security Systems acted as a single enterprise with a unity of interest, common business purpose, and unity of ownership such that the separate corporate personalities of the two entities are merged and indistinguishable and no longer exist.

14.     Stoer is informed and believes, and thereon alleges, that Defendant Benson Security Systems is, and at all times mentioned herein was, the majority owner of Benson

Systems of Northern California.

15.   Stoer is informed and believes, and thereon alleges, that Defendant Benson Security Systems and Benson Systems of Northern California share the same principal offices located at 2065 W. Obispo Avenue, Suite 101, Gilbert, Arizona 85233.

16.   Stoer is informed and believes, and thereon alleges, that at all times relevant herein, Defendant Benson Security Systems and Benson Systems of Northern California shared the same directors and officers responsible for supervision and management of the respective entities, including Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip Farber.

17.   Stoer is informed and believes, and thereon alleges, that at all times relevant herein, Defendant Benson Security Systems and Benson Systems of Northern California employed the same employees and attorney(s), including, but not limited to, Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson, Philip Farber, Brian Bartley and Attorney McFall "Mac" Kerbey III.

18.   Stoer is informed and believes, and thereon alleges, that at all times relevant herein, Benson Systems of Northern California shared the management and services of Defendant Benson Security Systems, including, but not limited to, legal, human resources, payroll, accounting, collections, administration, procurement of labor, employment, and equipment and use of Defendant Benson Security Systems' property and infrastructure, including, for example, warehouses.

19.   Stoer is informed and believes, and thereon alleges, that at all times relevant herein, Defendant Benson Security Systems, as the majority managing member of Benson Systems of Northern California, was responsible for the day-to-day management and operations of Benson Systems of Northern California, including, but not limited to, approval of all contracts and payment of all bills.

20.   Stoer is informed and believes, and thereon alleges, that Defendant Benson Security Systems caused Benson Systems of Northern California to fail to observe corporate formalities, including board meetings, maintenance of minutes and/or adequate

corporate records.

21.     Stoer is informed and believes, and thereon alleges, that at all times relevant herein, Defendant Benson Security Systems and Benson Systems of Northern California commingled corporate records and that Defendant Benson Security Systems is in possession of Benson Systems of Northern California's books of account and records, if any.

22.     Stoer is informed and believes, and thereon alleges, that at all times relevant herein, Defendant Benson Security Systems and Benson Systems of Northern California commingled funds and other assets and failed to segregate funds of the entities.

23.     Stoer is informed and believes, and thereon alleges, that if the conduct and acts of Benson Systems of Northern California as set forth below are treated as those of Benson Systems of Northern California alone, an inequitable result will follow and will result in fraud and/or injustice to Stoer.  Stoer is informed and believes, and thereon alleges, that Benson Systems of Northern California is, and at all times mentioned herein was, a shell company through which Defendant Benson Security Systems fraudulently conducted business in California.  Stoer is informed and believes, and thereon alleges, that Benson Systems of Northern California has in fact been used and exists for the sole purpose of enabling Defendant Benson Security Systems to wrongfully transact a portion of its business under an alternate corporate guise and as a conduit for a single venture.

24.     Stoer is informed and believes, and thereon alleges, that Benson Systems of Northern California is inadequately capitalized and/or undercapitalized such that Benson Systems of Northern California would be unable to pay any monies due and owing to Stoer for the acts and misconduct alleged herein.

25.     Stoer is informed and believes, and thereon alleges, that any funds or other assets of Benson Systems of Northern California have been diverted to Defendant Benson Security Systems and/or its officers and directors, including Defendant Shawn Benson, Defendant Eric Benson and/or Defendant Cory Benson.

26.     Stoer is informed and believes, and thereon alleges, Defendant Benson

1  Security Systems used Benson Systems of Northern California as a subterfuge of illegal

2  transactions, including performing unlicensed, defective and incomplete subcontracting

3  work in California, which has caused, and continues to cause Stoer over $6.2 million in

4  damages, as described further herein below.

5       27.    Defendant Benson Security Systems, as the parent and alter ego of Benson

6  Systems of Northern California, has been and is conducting, managing, and controlling the

7  affairs of Benson Systems of Northern California with respect to Stoer's claims in this

8  Complaint, as if Benson Systems of Northern California was its own business.  Defendant

9  Benson Security Systems has used the separate corporate identity of Benson Systems of

10  Northern California as a shell company for the purpose of unjustly attempting to shield

11  itself from prospective liability.  Recognition of the privilege of separate existence

12  between Defendant Benson Security Systems and Benson Systems of Northern California

13  would promote injustice, as Defendant Benson Security Systems organized and controlled

14  Benson Systems of Northern California such that it is now, and at all times mentioned

15  herein was, merely an instrumentality, agency, joint venture, conduit, or adjunct of

16  Defendant Benson Security Systems, and Defendant Benson Security Systems in bad faith,

17  dominated and controlled Benson Systems of Northern California as set forth below.

18       28.    Defendant Benson Security Systems is a contractor that designs and installs

19  electrical, HVAC, security, life safety, lighting, utilities and other systems.  Defendant

20  Benson Security Systems runs a large-scale operation in Arizona and in multiple states,

21  including in California.

22       29.    Stoer is a California-licensed general contractor that performs general

23  contracting services for various construction projects in California.

24       30.    In or before December 2017, Defendant Benson Security Systems and its

25  President and CEO Defendant Shawn Benson contacted Stoer President and CEO Sean

26  Anderson, expressing a desire for Defendant Benson Security Systems to perform work in

27  Northern California.

28       31.    In or about January 2018, Sean Anderson and Stoer principal Mike Ward

PLAINTIFF STOER CONSTRUCTION, INC.'S FIRST AMENDED COMPLAINT

traveled to Defendant Benson Security Systems' offices at 2065 W. Obispo Avenue, Suite 101, Gilbert, Arizona 85233 to meet with Defendant Benson Security Systems and its officers and/or managers, including Defendant Shawn Benson (President and CEO), Defendant Eric Benson (Chief Financial Officer), Defendant Cory Benson (Director of Operations) and Philip Farber (Vice President).

32.     At that January 2018 meeting, Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip Farber gave Sean Anderson and Mike Ward a tour of Benson's facility and operation in Arizona.

33.     Also at that January 2018 meeting, Defendant Shawn Benson told Sean Anderson and Mike Ward in the presence of Defendant Eric Benson, Defendant Cory Benson and Philip Farber that Defendant Benson Security Systems had national accounts, including Target, and that Defendant Benson Security Systems could perform work in multiple states as they had crews and access to labor in multiple states.  Defendant Shawn Benson further advised Sean Anderson and Mike Ward in the presence of Defendant Eric Benson, Defendant Cory Benson and Philip Farber that Defendant Benson Security Systems, run by him and his sons Defendant Eric Benson and Defendant Cory Benson, would bring all of their expertise, contacts, labor, and efficient, quality work for Stoer's projects in California.  Defendant Eric Benson, Defendant Cory Benson and Philip Farber also made statements consistent with Defendant Shawn Benson's statements and representations regarding Defendant Benson Security Systems' ability to perform work in California and/or did not express any statements in disapproval.

34.     The gist of the representations of Shawn Benson was that he desired to expand the successful Benson Security Systems by creating a California subsidiary that would be operated by his sons Eric and Cory under the supervision of Shawn Benson. However, Shawn, Eric, and Cory materially misrepresented the extent of Eric and Cory's practical experience, abilities, skills, and involvement in the Arizona business, and the extent Shawn Benson intended to supervise his sons in California.  In fact, Eric and Cory had not independently managed substantial projects of the size and extent being

contemplated in California, and Shawn Benson had no intention of actively supervising his sons' California activities.

35.     In or about February 2018, Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip Farber traveled to San Jose, California and Stoer's office at 1800 Hamilton Avenue, Suite 130, San Jose, California 95125 to meet again with Sean Anderson and Mike Ward.  Defendant Shawn Benson told Sean Anderson and Mike Ward in the presence of Defendant Eric Benson, Defendant Cory Benson and Philip Farber that Defendant Benson Security Systems would be able to guarantee and/or secure labor for the tight labor market across multiple trades for Stoer's projects in California.  Defendant Eric Benson, Defendant Cory Benson and Philip Farber also made statements consistent with Defendant Shawn Benson's statements and representations regarding Defendant Benson Security Systems' ability to secure labor and perform work in California and/or did not express any statements in disapproval.

36.     During or shortly after the meetings in January and February 2018 with Defendant Benson Security Systems and Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip Farber, Sean Anderson expressed concern to Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip Farber regarding Defendant Benson Security Systems' ability to do business in California as an Arizona corporation.  Defendant Shawn Benson thereafter advised Sean Anderson that Defendant Benson Security Systems would start its own Benson Northern California enterprise using Defendant Benson Security Systems' office and infrastructure in Arizona.

37.     In or about July 2018, Defendant Benson Security Systems formed Benson Systems of Northern California as a California limited liability company.

38.     Defendant Shawn Benson, as CEO and President of Benson Systems of Northern California, was responsible for top level management of Benson Systems of Northern California and providing supervision and oversight of the company and its operations.  Defendant Shawn Benson, however, failed to provide supervision and oversight of Benson Systems of Northern California at the detriment of Stoer as described

1  further herein below.

2       39.    Defendant Eric Benson, as Chief Financial Officer of Benson Systems of

3  Northern California, was responsible for sales, accounting and finances of the company.

4  Defendant Eric Benson, however, failed to ensure accurate accounting and obtain

5  necessary bond(s) for Benson Systems of Northern California at the detriment of Stoer as

6  described further herein below.

7       40.    Defendant Cory Benson, as Operations Manager of Benson Systems of

8  Northern California, was responsible for project operations.  Defendant Cory Benson,

9  however, lacked relevant field experience and failed to provide skilled, quality labor for

10  Stoer and at its detriment as described further herein below.

11       41.    On paper, from in or about July 2018 through in or about February 2022,

12  Defendant Benson Security Systems owned 47.5%; BC Holding, LLC ("BC Holding")

13  owned 45.5%; and Philip Farber owned 7% of Benson Systems of Northern California.

14  BC Holding is equally owned by investors Sean Anderson and Mike Ward.  BC Holding

15  was "frozen out" of Benson Systems of Northern California and as a practical matter had

16  no control over its management, control, and activities.  The Benson Defendants, as part of

17  their fraudulent scheme, refused all requests to provide information, including financials,

18  or to hold meetings, and in fact provided no information and held no meetings such that

19  BC Holding eventually abandoned its interest in Benson Systems of Northern California in

20  or about February 2022.

21       42.    From in or about February 2022 to the present, Defendant Benson Security

22  Systems has owned at least 87% or more of Benson Systems of Northern California.

23       43.    In or about June 2018, Stoer was hired by LD Milpitas Property, LLC to

24  construct a new hotel in Milpitas, California, called the LD Element Hotel (the "Project")

25  located at 521 Alder Drive, Milpitas, CA 95035.  The Project requires that Stoer complete

26  several complex scopes of work that relate to electrical systems, plumbing, fire alarms, fire

27  sprinklers, low voltage data systems, and heating, ventilating, and air-conditioning

28  ("HVAC") systems.

PLAINTIFF STOER CONSTRUCTION, INC.'S FIRST AMENDED COMPLAINT

44.     From July 2018 through October 2018, Defendant Benson Security Systems and its officers, directors and agents, including Defendant Shawn Benson, Defendant Eric Benson and Defendant Cory Benson induced Stoer to subcontract with Benson Systems of Northern California to complete the scopes of work for the Project.  Specifically, Stoer entered into six written subcontracts (together, the "Subcontracts") with Benson Systems of Northern California with regard to the Project:

    a.  A written subcontract, dated September 24, 2018, pursuant to which Benson Systems of Northern California agreed to install plumbing in consideration for Stoer's payment of $2,500,000.13 (the "Plumbing Subcontract");

    b.  A written subcontract, dated October 8, 2018, pursuant to which Benson Systems of Northern California agreed to install an HVAC system in consideration for Stoer's payment of $2,100,000.00 (the "HVAC Subcontract");

    c.  A written subcontract, dated October 8, 2018, pursuant to which Benson Systems of Northern California agreed to install a fire sprinkler or fire suppression system in consideration for Stoer's payment of $300,000.00 (the "Fire Sprinkler Subcontract");

    d.  A written subcontract, dated October 9, 2018, pursuant to which Benson Systems of Northern California agreed to install a fire alarm system in consideration for Stoer's payment of $200,000.00 (the "Fire Alarm Subcontract");

    e.  A written subcontract, dated October 9, 2018, pursuant to which Benson Systems of Northern California agreed to install a low voltage data communication system in consideration for Stoer's payment of $200,000.00 (the "LV Subcontract"); and

    f.  A written subcontract, dated October 17, 2018, pursuant to which Benson Systems of Northern California agreed to install an electrical system in consideration for Stoer's payment of $2,950,000.00 (the "Electrical

Subcontract").

45.     During the negotiation and execution of each of the Subcontracts from September 2018 to March 2019, Defendant Benson Security Systems and its directors, officers and/or agents, including, but not limited to, Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip Farber, represented to Stoer that Benson Systems of Northern California held a valid California contractor license.

46.     Specifically, in an effort to comply with California law, Defendant Benson Security Systems and its directors, officers and/or agents, including, but not limited to Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip Farber represented that Benson Systems of Northern California's California contractor's license number was 795362.

47.     Defendant Benson Security Systems, at the direction of Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and/or Philip Farber, added California contractor's license number 795362 to each of the written Subcontracts.

48.     Defendant Benson Security Systems and its directors, officers and/or agents, including, but not limited to, Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip Farber's representation regarding Benson Systems of Northern California's contractor's license status was false.

49.     Benson Systems of Northern California did not have a valid California contractor license.

50.     Rather, California contractor license number 795362 belonged to Defendant Benson Security Systems.

51.     Defendant Benson Security Systems and its directors, officers and/or agents, including, but not limited to, Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip Farber knew its representation about Benson Systems of Northern California's license status was false.  Despite this falsity, Defendant Benson Security Systems and its directors, officers and/or agents, including, but not limited to, Defendant Shawn Benson, Defendant Eric Benson, Defendant Cory Benson and Philip

1   Farber made the representation to induce Stoer to enter into the six Subcontracts with

2   Benson Systems of Northern California for the Project.  If Benson Systems of Northern

3   California completed the six Subcontracts, it would have resulted in a minimum

4   $8,250,000 payment from Stoer to Benson Systems of Northern California, which would

5   then ultimately pass through to Defendant Benson Security Systems and its owners and

6   members, including Defendant Shawn Benson, Defendant Eric Benson and Defendant

7   Cory Benson.

8          52.     In reliance on Defendant Benson Security Systems and its directors, officers

9   and/or agents, including, but not limited to, Defendant Shawn Benson, Defendant Eric

10  Benson, Defendant Cory Benson and Philip Farber's representations regarding their ability

11  to perform competent, licensed work in California, Stoer executed the Subcontracts with

12  Benson Systems of Northern California.

13         53.     The Subcontracts contained a provision regarding scope, pursuant to which

14  Benson Systems of Northern California agreed to furnish all labor, materials, equipment,

15  and other facilities required to perform the scope of work referenced and fully incorporated

16  in each Subcontract.  Inherent in this provision was Benson Systems of Northern

17  California's duty to perform the scope of work in a workmanlike manner and in accordance

18  with applicable standard industry practices, as a duly licensed California construction

19  contractor.

20         54.     The Subcontracts also contained a provision regarding contract price.

21  Pursuant to this provision, Stoer agreed to pay Benson Systems of Northern California a

22  specific sum for Benson Systems of Northern California's strict performance of work with

23  respect to each individual Subcontract.

24         55.     The Subcontracts also contained a provision regarding payment, pursuant to

25  which Stoer agreed to pay Benson Systems of Northern California in monthly progress

26  payments for ninety percent of the work Benson Systems of Northern California completed

27  each month.  The payment provision also specified that, once Benson Systems of Northern

28  California completed the construction work in conformity with the Subcontracts, and once

Stoer and the owner of the Project accepted the work, Stoer would make final payment to Benson Systems of Northern California.

56.     The Subcontracts also contained a provision regarding time.  Pursuant to this provision, Benson Systems of Northern California agreed to perform its work in a prompt and diligent manner in accordance with Stoer's progress schedule without delaying or hindering Stoer's work, or the work of other subcontractors.

57.     The Subcontracts also contained a provision regarding compliance.  Pursuant to this provision, Benson Systems of Northern California agreed to comply with all statutes, codes, regulations, and other applicable laws, and to perform the construction work with the proper licenses and registrations.  Benson Systems of Northern California specifically agreed that it was and at all relevant times would be duly licensed by, and in good standing with, the CSLB.

58.     Further, the Subcontracts included a provision entitling attorney fees to the prevailing party with respect to any disputes arising out of the Subcontracts.  The attorney fees provision entitled the prevailing party to full compensation for attorney fees and expert fees.

59.     Following the execution of the Subcontracts, Benson Systems of Northern California began construction pursuant to the schedules and scopes of work identified in same.  The Benson Defendants, however, failed to cause Benson Systems of Northern California to perform the contractual obligations under the Subcontracts, despite the clear and unambiguous nature of those contractual obligations.

60.     By July 2020, Benson Systems of Northern California demonstrated a continued failure to perform work competently, as scheduled, and as budgeted, with regard to the LV Subcontract, the Electrical Subcontract, and the Fire Alarm Subcontract.  The work that was performed under these subcontracts was incorrect, of poor quality, and incomplete.  This caused Stoer to fall behind schedule, forced Stoer to arrange for the subcontracted work to be redone, and forced Stoer to incur additional costs.

61.     Stoer timely notified Benson Systems of Northern California, and in some

cases provided repeated notifications, of these breaches and provided the opportunity to cure such breaches.  Benson Systems of Northern California failed to cure these breaches, continued to breach the Subcontracts, and demonstrated an inability to adequately perform the contractual obligations under those subcontracts.

62.     Due to Benson Systems of Northern California's failure and inability to perform under the LV Subcontract, Electrical Subcontract, and the Fire Alarm Subcontract, Stoer terminated those subcontracts, for cause, on July 27, 2020 and reassigned same to a different, more capable subcontractor.  This left Benson Systems of Northern California with three of the original six Subcontracts: the HVAC Subcontract, Plumbing Subcontract, and Fire Sprinkler Subcontract.

63.     The Benson Defendants caused Benson Systems of Northern California to continue the construction work pursuant to the remaining HVAC Subcontract, Plumbing Subcontract, and Fire Sprinkler Subcontract.  However, as before, Benson Systems of Northern California failed to sufficiently perform the obligations pursuant to those subcontracts by failing to provide competent and timely work as contemplated by the applicable schedules and scopes of work, and by failing to adhere to the applicable budgets.  This caused Stoer to fall further behind schedule, forced Stoer to arrange for the subcontracted work to be redone, and forced Stoer to incur additional costs.

64.     As with the previous subcontracts under which Bensons Systems of Northern California failed to perform, Stoer timely notified Benson Systems of Northern California of the nonperformance of the HVAC Subcontract, Plumbing Subcontract, and Fire Sprinkler Subcontract, and provided Benson Systems of Northern California with the opportunity to cure the negative effects (including breach of contract) of Benson Systems of Northern California's nonperformance.  Benson Systems of Northern California failed to cure the breaches.

65.     On October 28, 2020, Stoer terminated the HVAC Subcontract, Plumbing Subcontract, and Fire Sprinkler Subcontract for cause.  Stoer has since reassigned such subcontracts to a different, more capable subcontractor.

66.     In addition to Benson Systems of Northern California's failure and inability to perform under the Subcontracts, the Benson Defendants, as the parent and alter ego of Benson Systems of Northern California, and acting as a single enterprise with Benson Systems of Northern California, caused Benson Systems of Northern California to engage in fraudulent billing practices.  Specifically, in Benson Systems of Northern California's invoices to Stoer, Benson Systems of Northern California falsely alleged that it had completed certain construction work under the Subcontracts and requested payment for such incomplete work.

67.     In particular, under the LV Subcontract, Benson Systems of Northern California billed Stoer for 60% of the subcontracted work, but only completed 48% of same.  With respect to the Electrical Subcontract, Benson Systems of Northern California billed Stoer for 76% of the subcontracted work, but only completed 59% of same.  With respect to the Fire Alarm Subcontract, Benson Systems of Northern California billed Stoer for 80% of the subcontracted work, but only completed 66% of same.  As for the Fire Sprinkler Subcontract, Benson Systems of Northern California billed Stoer for 91% of the subcontracted work, but only completed 67% of same.  With regard to the HVAC Subcontract, Benson Systems of Northern California billed Stoer for 92% of the subcontracted work, but only completed 63% of same.  Finally, with respect to the Plumbing Subcontract, Benson Systems of Northern California billed Stoer for 80% of the subcontracted work, but only completed 72% of same.

68.     Although Benson Systems of Northern California and the Benson Defendants knew Benson Systems of Northern California's statements of work and invoiced amounts were untrue, Benson Systems of Northern California and the Benson Defendants knowingly invoiced Stoer under these false premises.

69.     In consideration of the professional relationship Stoer had with the Benson Defendants, Stoer relied on Benson Systems of Northern California's misrepresentations in their invoices, and fully paid each invoice without knowing that the invoices contained fabricated information.  In total, Stoer unknowingly paid Benson Systems of Northern

California for work not performed and materials not provided in an amount that exceeds $1,500,000.  Stoer is informed and believes, and on that basis alleges, that all of this money flowed to the Benson Defendants.

70.     When Stoer inspected Benson Systems of Northern California's progress at the worksite, Stoer discovered that Benson Systems of Northern California had not completed or performed, and/or had incompetently completed certain, work for which Benson Systems of Northern California had invoiced Stoer, and for which Stoer had already paid.  These fraudulent billing practices also factored into Stoer's decision to terminate the Subcontracts with Benson Systems of Northern California.

71.     The Benson Defendants, and each of them, directly participated in this fraudulent scheme and are responsible for the misconduct of Benson Systems of Northern California.

72.     In or about January through March 2019, Stoer Project Manager Craig Shaver and/or Stoer President and CEO Sean Anderson advised Defendant Shawn Benson and Defendant Eric Benson several times, orally and in writing, that a subcontractor bond obtained by Benson Systems of Northern California was a required condition of the Project.

73.     In or about February 2019 through October 2019, Defendant Eric Benson advised Sean Anderson and Stoer Director of Operations Phil Varni orally and in writing that he would be responsible (with his father Defendant Shawn Benson's oversight) for obtaining the bond for the Project on behalf of Benson Systems of Northern California. Defendant Eric Benson's representations were a lie as Benson Systems of Northern California never obtained a bond for the Project.  Defendant Shawn Benson also failed to exercise the requisite oversight of Defendant Eric Benson's work and also failed to obtain a bond for the Project.

74.     In or about June 2019, when Stoer began discovering issues with Benson Systems of Northern California's performance of work on the Project, Sean Anderson and Mike Ward advised Defendant Shawn Benson and Defendant Cory Benson orally and in

writing of these issues.  Defendant Cory Benson, who was responsible for management of operations, including field operations, for the Project, visited the Project site during this time and told Sean Anderson, Mike Ward and other Stoer personnel that Benson Systems of Northern California was providing skilled, quality labor for the Project.  Defendant Cory Benson's representations were a lie as Benson Systems of Northern California failed to provide the promised effective operations and skilled, quality labor for the Project as there was constant turnover of field foreman and other staff without replacement.

75.     Defendant Shawn Benson also failed to exercise the requisite oversight of Defendant Cory Benson's work and failed to provide effective operations and skilled, quality labor for the Project.  In or about July 2018 when Benson Systems of Northern California was formed and throughout Benson Systems of Northern California's work on the Project from September 2018 through October 2020, Defendant Shawn Benson advised Stoer that he would provide oversight of Benson Systems of Northern California's work on the Project, including the work of his sons Defendant Eric Benson and Defendant Cory Benson, and provide resources for the Project.  Defendant Shawn Benson's representations were a lie as he failed to provide the requisite oversight and resources for the Project.

76.     As plead more specifically below, the various contracts called for progress payments.  Defendant Benson Security Systems, by and through Defendant Shawn Benson, Defendant Eric Benson, and Defendant Cory Benson, and acting through their alter ego Benson Systems of Northern California did charge Stoer and collect payments from Stoer for work not done, for shabby and incomplete work, and in events for work it was not legally licensed to perform.  Payments for such work was transferred to the accounts of Defendant Benson Security Systems and/or paid to the individual Defendants Shawn Benson, Eric Benson, and Corey Benson.  The exact amounts paid, when, and to whom are presently known only by the Benson Defendants who have concealed, and continue to conceal said payments.

77.     On October 30, 2020, in accordance with the arbitration provision in the Subcontracts, Stoer initiated arbitration against Benson Systems of Northern California,

with the American Arbitration Association ("AAA").

78.     Stoer and Benson Systems of Northern California completed the "strike and rank" process, and AAA appointed an arbitrator to oversee the matter.

79.     Shortly after the initial arbitration management conference, Stoer discovered that Benson Systems of Northern California did not hold a valid California contractor's license.  Stoer brought this to Benson Systems of Northern California's attention and, pursuant to California Business and Professions Code section 7031(b), demanded the repayment of the $6,267,710.99 Stoer paid for the newly discovered unlicensed construction work on the Project.

80.     On June 16, 2021, in response to Stoer's demand, Defendant Benson Security Systems caused Benson Systems of Northern California to petition for bankruptcy in the United States Bankruptcy District Court for the District of Arizona in case number 2:21-bk-04680-MCW.  Benson Systems of Northern California's bankruptcy petition is an attempt by the Benson Defendants to avoid liability for the illegal, unlicensed, defective and incomplete construction work performed by Benson Systems of Northern California on the Project.

## **FIRST CAUSE OF ACTION**

**(Recovery of Payments to Unlicensed Contractor Pursuant to California Business and Professions Code §7031(b) – Against All Defendants)**

81.     Stoer incorporates herein by reference each of the preceding paragraphs as if recited herein in full.

82.     Stoer entered into six written Subcontracts with Benson Systems of Northern California with respect to the Project as follows:

    a.  A written subcontract, dated September 24, 2018, pursuant to which Benson Systems of Northern California agreed to install plumbing in consideration for Stoer's payment of $2,500,000.13 (the "Plumbing Subcontract");

    b.  A written subcontract, dated October 8, 2018, pursuant to which Benson

Systems of Northern California agreed to install an HVAC system in consideration for Stoer's payment of $2,100,000.00 (the "HVAC Subcontract");

c. A written subcontract, dated October 8, 2018, pursuant to which Benson Systems of Northern California agreed to install a fire sprinkler or fire suppression system in consideration for Stoer's payment of $300,000.00 (the "Fire Sprinkler Subcontract");

d. A written subcontract, dated October 9, 2018, pursuant to which Benson Systems of Northern California agreed to install a fire alarm system in consideration for Stoer's payment of $200,000.00 (the "Fire Alarm Subcontract");

e. A written subcontract, dated October 9, 2018, pursuant to which Benson Systems of Northern California agreed to install a low voltage data communication system in consideration for Stoer's payment of $200,000.00 (the "LV Subcontract"); and

f. A written subcontract, dated October 17, 2018, pursuant to which Benson Systems of Northern California agreed to install an electrical system in consideration for Stoer's payment of $2,950,000.00 (the "Electrical Subcontract").

83.     Benson Systems of Northern California entered into the six written Subcontracts with Stoer as Defendant Benson Security Systems' subsidiary and alter ego, and acting as a single enterprise with Defendant Benson Security Systems.

84.     Pursuant to California law, Benson Systems of Northern California was required to possess a valid California contractor's license to perform the above-referenced contracting services.

85.     Despite Benson Systems of Northern California's and the Benson Defendants' representations that Benson Systems of Northern California was a licensed contractor authorized to provide contracting services in California, Benson Systems of

Northern California did not have a valid California contractor's license.

86.     Benson Systems of Northern California performed construction work and provided contracting services to Stoer under the Subcontracts for the Project, despite not holding a valid California contractor's license.

87.     Stoer paid Benson Systems of Northern California a total of $6,267,710.99 for the unlicensed construction work and subcontracting services on the Project.

88.     Pursuant to California Business and Professions Code section 7031(b), Stoer is entitled to recover the $6,267,710.99 it paid to Benson Systems of Northern California. Defendant Benson Security Systems is jointly and severally liable to Stoer for the repayment of these funds under the alter ego or single enterprise doctrine.  Defendant Shawn Benson, Defendant Eric Benson, and Defendant Cory Benson are jointly and severally liable to Stoer for the repayment of these funds on the basis of their personal and active participation, as aiders and abettors, and/or the Law of Agency.

WHEREFORE, Stoer prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Intentional Misrepresentation – Against All Defendants)

89.     Stoer incorporates herein by reference each of the preceding paragraphs as if recited herein in full.

90.     The gist of the representations of Shawn Benson was that he desired to expand the successful Benson Security Systems by creating a California subsidiary that would be operated by his sons Eric and Cory under the supervision of Shawn Benson. However, Shawn, Eric, and Cory materially misrepresented the extent of Eric and Cory's practical experience, abilities, skills, and involvement in the Arizona business, and the extent Shawn Benson intended to supervise his sons in California.  In fact, Eric and Cory had not independently managed substantial projects of the size and extent being contemplated in California, and Shawn Benson had no intention of actively supervising his sons' California activities.  Said false representations were knowingly and intentionally made to induce Stoer into entering into subcontracts, were reasonably relied upon by Stoer,

and did result in Stoer entering into subcontracts that resulted in over $6.2 million in damages.

91.     During the aforementioned discussions to form a business relationship, the Benson Defendants, particularly Shawn, Eric, and Corey represented that they would contribute human resources from their Arizona operation, including qualified journeymen construction workers and procurement of labor, employment, and equipment and generally make available the use of Defendant Benson Security Systems' property and infrastructure. This was a false and fraudulent inducement known to be untrue at the time it was represented, and intended to induce subcontracts.  Stoer reasonably relied upon said representations in entering into subcontracts with the Benson Defendants and said misrepresentations caused damages of not less than $6.2 million in damages.

92.     From September 2018 to March 2019, Stoer and the Benson Defendants engaged in negotiations regarding the six Subcontracts.  Shawn Benson, a member of Benson Systems of Northern California and the Director and President of Benson Security Systems, Eric Benson, the Treasurer of Benson Security Systems and the Chief Financial Officer of Benson Systems of Northern California, and Cory Benson, the Secretary of Benson Security Systems, negotiated the six Subcontracts on behalf of the Benson Defendants.  The negotiations occurred telephonically, in writing, and in person at Stoer's San Jose, California headquarters.

93.     During the negotiation and execution of each of the Subcontracts from September 2018 to March 2019, the Benson Defendants represented to Stoer that Benson Systems of Northern California held a valid California contractor's license.  Specifically, the Benson Defendants represented that Benson Systems of Northern California held California contractor's license number 795362.  That license number was included in each of the written Subcontracts.  The Benson Defendants represented that this fact was true.

94.     The Benson Defendants' representation regarding Benson Systems of Northern California's contractor's license status was false; Benson Systems of Northern California did not have a valid California contractor's license.  Rather, California

1  contractor's license number 795362 belonged to Benson Security Systems, the parent

2  company, majority owner, and alter ego of Benson Systems of Northern California.

3      95.   The Benson Defendants knew their representation about Benson Systems of

4  Northern California's contractor's license status was false when made, or made the

5  representation recklessly and without regard for its truth.

6      96.   Despite this falsity, the Benson Defendants intended that Stoer rely on this

7  representation.  The Benson Defendants made the representation to induce Stoer to enter

8  into the six Subcontracts with Benson Systems of Northern California for the Project.  If

9  Benson Systems of Northern California completed the six Subcontracts, it would have

10  resulted in a minimum $8,250,000 payment from Stoer to Benson Systems of Northern

11  California, which would then pass through to its parent and alter ego, Defendant Benson

12  Security Systems and its owners and members, including Defendant Shawn Benson,

13  Defendant Eric Benson and Defendant Cory Benson.

14      97.   Stoer reasonably relied on this representation.  In reliance on this

15  representation, Stoer executed the Subcontracts with Benson Systems of Northern

16  California.

17      98.   Stoer was harmed as a result of its reliance on the Benson Defendants' false

18  representation.  Under the impression that Benson Systems of Northern California held a

19  valid California contractor's license and was competent and capable of performing the

20  work required under the subject Subcontracts, Stoer authorized Benson Systems of

21  Northern California to perform construction work and contracting services on the Project.

22      99.   Stoer paid Benson Systems of Northern California $6,267,710.99 for work

23  on the Project.  Stoer has been damaged in this amount, as Benson Systems of Northern

24  California is an unlicensed contractor and is not entitled to payment for unlicensed contract

25  work performed in California pursuant to California Business and Professions Code

26  section 7031(b).

27      100.  Stoer's reliance on the Benson Defendants' representation regarding Benson

28  Systems of Northern California's license status was a substantial factor in causing Stoer's

1    harm.

2        101.    Additionally, the Benson Defendants represented to Stoer that Benson

3    Systems of Northern California had completed or performed certain construction work

4    under the Subcontracts, thereby warranting payment from Stoer.  The Benson Defendants

5    represented this fact as true by causing Benson Systems of Northern California to invoice

6    Stoer for the work allegedly performed.

7        102.    The Benson Defendants' representations to Stoer were false because Benson

8    Systems of Northern California did not fully or competently perform construction work

9    under the Subcontracts as alleged in its invoices.  Benson Systems of Northern California

10   and the Benson Defendants were not entitled to receive payment this work.

11       103.    Specifically, Between September 2018 and September 2020, the Benson

12   Defendants caused Benson Systems of Northern California to engage in a pattern of

13   fraudulently billing Stoer for incomplete work under the false representation that such

14   work was complete.

15       104.    In particular, under the LV Subcontract, the Benson Defendants caused

16   Benson Systems of Northern California to bill Stoer for 60% of the subcontracted work,

17   but Benson Systems of Northern California has only completed 48% of same.  With

18   respect to the Electrical Subcontract, the Benson Defendants caused Benson Systems of

19   Northern California to bill Stoer for 76% of the subcontracted work, but Benson Systems

20   of Northern California only completed 59% of same.  Regarding the Fire Alarm

21   Subcontract, the Benson Defendants caused Benson Systems of Northern California to bill

22   Stoer for 80% of the subcontracted work, but Benson Systems of Northern California only

23   completed 66% of same.  As for the Fire Sprinkler Subcontract, the Benson Defendants

24   caused Benson Systems of Northern California to bill Stoer for 91% of the subcontracted

25   work, but Benson Systems of Northern California only completed 67% of same.  With

26   regard to the HVAC Subcontract, the Benson Defendants caused Benson Systems of

27   Northern California to bill Stoer for 92% of the subcontracted work, but Benson Systems

28   of Northern California only completed 63% of same.  Finally, with respect to the Plumbing

1    Subcontract, the Benson Defendants caused Benson Systems of Northern California to bill
2    Stoer for 80% of the subcontracted work, but Benson Systems of Northern California only
3    completed 72% of same.

4           105.    In total, between September 2018 and September 2020, the Benson
5    Defendants knowingly and intentionally caused Benson Systems of Northern California to
6    overbill Stoer for incomplete and unperformed work, and undelivered materials by over
7    $1,500,000.

8           106.    When the Benson Defendants made these false representations in Benson
9    Systems of Northern California's invoices to Stoer, the Benson Defendants knew that the
10   representations were false, or made the representations recklessly without regard for their
11   truth.

12          107.    The Benson Defendants intended that Stoer rely on the representations.

13          108.    Stoer reasonably relied on the Benson Defendants' representation and
14   unknowingly paid Benson Systems of Northern California for the incomplete and
15   unperformed work and undelivered materials and equipment as falsely invoiced by Benson
16   Systems of Northern California in an amount that exceeds $1,500,000.

17          109.    Stoer was harmed as a result of its reliance on the Benson Defendants'
18   misrepresentations.  Stoer's reliance on the Benson Defendants' misrepresentation was a
19   substantial factor in causing Stoer's harm.

20          WHEREFORE, Stoer prays for relief as set forth below.

21                          **THIRD CAUSE OF ACTION**

22                   **(Negligent Misrepresentation – Against All Defendants)**

23          110.    Stoer incorporates herein by reference each of the preceding paragraphs as if
24   recited herein in full.

25          111.    The gist of the representations of Shawn Benson was that he desired to
26   expand the successful Benson Security Systems by creating a California subsidiary that
27   would be operated by his sons Eric and Cory under the supervision of Shawn Benson.
28   However, Shawn, Eric, and Cory materially misrepresented the extent of Eric and Cory's

practical experience, abilities, skills, and involvement in the Arizona business, and the extent Shawn Benson intended to supervise his sons in California.  In fact, Eric and Cory had not independently managed substantial projects of the size and extent being contemplated in California, and Shawn Benson had no time or bandwidth to actively supervise his sons' California activities.  Said false representations were recklessly made without factual basis and/or based upon mere half-truths to induce Stoer into entering into subcontracts, were reasonably relied upon by Stoer, and did result in Stoer entering into subcontracts that resulted in over $6.2 million in damages.

112.    During the aforementioned discussions to form a business relationship, the Benson Defendants, particularly Shawn, Eric, and Corey represented that they would contribute human resources from their Arizona operation, including qualified journeymen construction workers and procurement of labor, employment, and equipment and generally make available the use of Defendant Benson Security Systems' property and infrastructure. There was no adequate factual basis for said representations and said representations were at best half-truths because Benson Security Systems had no process existing, or planned, to perform such promises.  Said representations were untrue at the time represented, and intended to induce subcontracts.  Stoer reasonably relied upon said representations in entering into subcontracts with the Benson Defendants and said misrepresentations caused damages of not less than $6.2 million in damages.

113.    From September 2018 to March 2019, Stoer and the Benson Defendants engaged in negotiations regarding the six Subcontracts.  Sean Anderson, the President and Chief Executive Officer of Stoer, negotiated the six Subcontracts on behalf of Stoer.  On information and belief, Shawn Benson, a member of Benson Systems of Northern California and the Director and President of Benson Security Systems, Eric Benson, the Treasurer of Benson Security Systems and the Chief Financial Officer of Benson Systems of Northern California, and Cory Benson, the Secretary of Benson Security Systems, negotiated the six Subcontracts on behalf of the Benson Defendants.  The negotiations occurred telephonically, in writing, and in person at Stoer's San Jose, California

1  headquarters.

2      114.    During the negotiation and execution of each of the Subcontracts from

3  September 2018 to March 2019, the Benson Defendants made representations to Stoer that

4  Benson Systems of Northern California held a valid California contractor's license.

5  Specifically, the Benson Defendants represented that Benson Systems of Northern

6  California's California contractor's license number was 795362.  That license number was

7  included in each of the written Subcontracts.  The Benson Defendants represented that this

8  fact was true.

9      115.    The representation regarding Benson Systems of Northern California's

10  license status was false.  Benson Systems of Northern California did not have a valid

11  California contractor license.  Rather, California contractor license number 795362

12  belonged to Benson Security Systems.

13      116.    The Benson Defendants had no reasonable grounds for believing the

14  representation regarding Benson Systems of Northern California's contractor's license

15  status was true at the time the Benson Defendants caused Benson Systems of Northern

16  California to enter into the Subcontracts, and when the Benson Defendants represented to

17  Stoer that Benson Systems of Northern California was a duly licensed California

18  contractor.

19      117.    Despite this, the Benson Defendants intended that Stoer rely on this

20  representation.  The Benson Defendants made the representation to induce Stoer to enter

21  into the six Subcontracts with Benson Systems of Northern California for the Project.  If

22  Benson Systems of Northern California, completed the six Subcontracts, it would have

23  resulted in a minimum $8,250,000 payment from Stoer to Benson Systems of Northern

24  California, which would then pass through to Defendant Benson Security Systems and its

25  owners and members, including Defendant Shawn Benson, Defendant Eric Benson and

26  Defendant Cory Benson.

27      118.    Stoer reasonably relied on this representation.  In reliance on the Benson

28  Defendants' representation, Stoer executed the Subcontracts with Benson Systems of

Northern California.

119.    Stoer was harmed as a result of its reliance on the Benson Defendants' false representation.  Under the impression that Benson Systems of Northern California held a valid California contractor's license, and was competent and cable of performing the work required under the Subcontracts, Stoer authorized Benson Systems of Northern California to perform construction work and contracting services on the Project.

120.    Stoer paid Benson Systems of Northern California  $6,267,710.99 for its work on the Project.  Stoer has been damaged in this amount, as Benson Systems of Northern California is an unlicensed contractor and is not entitled to payment for unlicensed contract work performed in California pursuant to California Business and Professions Code section 7031(b).

121.    Stoer's reliance on the Benson Defendants' representation regarding Benson Systems of Northern California's license status was a substantial factor in causing Stoer's harm.

122.    Additionally, the Benson Defendants represented to Stoer that they had completed or performed certain construction work under the Subcontracts, thereby warranting payment from Stoer.  The Benson Defendants represented this fact as true by causing Benson Systems of Northern California to invoice Stoer for the work allegedly performed.

123.    The Benson Defendants' representations to Stoer were false because Benson Systems of Northern California did not fully or competently perform construction work under the Subcontracts as alleged in its invoices.  Benson Systems of Northern California was not entitled to receive payment for same.

124.    Between September 2018 and September 2020, the Benson Defendants caused Benson Systems of Northern California to engage in a pattern of fraudulently billing Stoer for incomplete work under the false representation that such work was complete.

125.    In particular, under the LV Subcontract, the Benson Defendants caused

Benson Systems of Northern California to bill Stoer for 60% of the subcontracted work, but Benson Systems of Northern California had only completed 48% of same.  With respect to the Electrical Subcontract, the Benson Defendants caused Benson Systems of Northern California to bill Stoer for 76% of the subcontracted work, but Benson Systems of Northern California had only completed 59% of same.  Regarding the Fire Alarm Subcontract, the Benson Defendants caused Benson Systems of Northern California to bill Stoer for 80% of the subcontracted work, but Benson Systems of Northern California had only completed 66% of same.  As for the Fire Sprinkler Subcontract, the Benson Defendants caused Benson Systems of Northern California to bill Stoer for 91% of the subcontracted work, but Benson Systems of Northern California had only completed 67% of same.  With regard to the HVAC Subcontract, the Benson Defendants caused Benson Systems of Northern California to bill Stoer for 92% of the subcontracted work, but Benson Systems of Northern California had only completed 63% of same.  Finally, with respect to the Plumbing Subcontract, the Benson Defendants caused Benson Systems of Northern California to bill Stoer for 80% of the subcontracted work, but Benson Systems of Northern California had only completed 72% of same.

126.   In total, between September 2018 and September 2020, the Benson Defendants knowingly and intentionally caused Benson Systems of Northern California to overbill Stoer for incomplete work by more than $1,500,000.

127.   The Benson Defendants had no reasonable grounds for believing the representations in Benson Systems of Northern California's invoices were true at the time the Benson Defendants caused the invoices to be billed to Stoer.

128.   The Benson Defendants intended that Stoer rely on the representations.

129.   Stoer reasonably relied on the representation and unknowingly paid Benson Systems of Northern California for the incomplete construction work as falsely invoiced by Benson Systems of Northern California in an amount that exceeds $1,500,000.

130.   Stoer was harmed as a result of its reliance on the Benson Defendants' misrepresentations.  Stoer's reliance on the Benson Defendants' misrepresentation was a

1    substantial factor in causing Stoer's harm.

2        WHEREFORE, Stoer prays for relief as set forth below.

3        **<u>FOURTH CAUSE OF ACTION</u>**

4       **(Breach of Written Contract – Against Defendant Benson Security Systems and**

5                               **Does 1-50)**

6      131.   Stoer incorporates herein by reference each of the preceding paragraphs as if

7    recited herein in full.

8      132.   On or about September 24, 2018, Stoer and Benson Systems of Northern

9    California entered into a written Plumbing Subcontract.  Pursuant to the Plumbing

10   Subcontract, Benson Systems of Northern California agreed to furnish all labor, materials,

11   equipment, and other facilities required to perform the scope of work referenced and fully

12   incorporated in the Plumbing Subcontract.  Benson Systems of Northern California also

13   assumed a duty to perform the scope of work in the Plumbing Subcontract in a

14   workmanlike manner and in accordance with applicable standard industry practices.

15   Benson Systems of Northern California agreed to prosecute its work in a prompt and

16   diligent manner in accordance with Stoer's progress schedule, as set forth in the Plumbing

17   Subcontract, without delaying or hindering Stoer's work, or the work of other

18   subcontractors.  Further, Benson Systems of Northern California agreed to comply with all

19   statutes, codes, regulations, and other applicable laws, and to perform the construction

20   work with the proper licenses and registrations.  Benson Systems of Northern California

21   specifically agreed that it was and at all relevant times would be duly licensed by, and in

22   good standing with, the California Contractors State License Board ("CSLB").

23      133.   In consideration for Benson Systems of Northern California's work, Stoer

24   agreed to pay Benson Systems of Northern California a specific sum for Benson Systems

25   of Northern California's strict performance of its work in conformance with the terms of

26   the Plumbing Subcontract.  Stoer agreed to pay Benson Systems of Northern California in

27   monthly progress payments for ninety percent of the work Benson Systems of Northern

28   California completed each month.  Once Benson Systems of Northern California

completed the construction work in conformity with the Plumbing Subcontract, and once Stoer and the owner of the Project accepted the work, Stoer would make final payment to Benson Systems of Northern California.

134.   Stoer fully performed all the terms and conditions required of it under the Plumbing Subcontract, except any that have been excused.  Specifically, Stoer paid Benson Systems of Northern California for ninety percent of the work Benson Systems of Northern California completed each month, as billed in Benson Systems of Northern California's invoices for the Plumbing Subcontract.

135.   Benson Systems of Northern California breached the Plumbing Subcontract by failing to perform competent and quality construction work that complied with the schedule, scope of work, and budget.  Benson Systems of Northern California also breached the Plumbing Subcontract by overbilling Stoer for work that Benson Systems of Northern California had not yet completed.  Benson Systems of Northern California also breached the Plumbing Subcontract by not having a valid California contractor's license.

136.   As a result of Benson Systems of Northern California's breach of the Plumbing Subcontract, Benson Systems of Northern California had to redo the work, and when such work proved to be insufficient yet again, Stoer was forced to hire new subcontractors to redo Benson Systems of Northern California's unsatisfactory work and finish Benson Systems of Northern California's incomplete work.  Benson Systems of Northern California's breach caused Stoer to fall behind schedule for the Project and also forced Stoer to incur additional, unnecessary costs.

137.   Benson Systems of Northern California's breach of the Plumbing Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary damages according to proof.  Further, Stoer has suffered damage to its reputation due to Benson Systems of Northern California's breach of the Plumbing Subcontract.

138.   On or about October 8, 2018, Stoer and Benson Systems of Northern California entered into a written HVAC Subcontract.  Pursuant to the HVAC Subcontract, Benson Systems of Northern California agreed to furnish all labor, materials, equipment,

and other facilities required to perform the scope of work referenced and fully incorporated in the HVAC Subcontract.  Benson Systems of Northern California also assumed a duty to perform the scope of work in the HVAC Subcontract in a workmanlike manner and in accordance with applicable standard industry practices.  Benson Systems of Northern California agreed to prosecute its work in a prompt and diligent manner in accordance with Stoer's progress schedule, as set forth in the HVAC Subcontract, without delaying or hindering Stoer's work, or the work of other subcontractors.  Further, Benson Systems of Northern California agreed to comply with all statutes, codes, regulations, and other applicable laws, and to perform the construction work with the proper licenses and registrations.  Benson Systems of Northern California specifically agreed that it was and at all relevant times would be duly licensed by, and in good standing with, the CSLB.

139.    In consideration for Benson Systems of Northern California's work, Stoer agreed to pay Benson Systems of Northern California a specific sum for Benson Systems of Northern California's strict performance of its work in conformance with the terms of the HVAC Subcontract.  Stoer agreed to pay Benson Systems of Northern California in monthly progress payments for ninety percent of the work Benson Systems of Northern California completed each month.  Once Benson Systems of Northern California completed the construction work in conformity with the HVAC Subcontract, and once Stoer and the owner of the Project accepted the work, Stoer would make final payment to Benson Systems of Northern California.

140.    Stoer fully performed all the terms and conditions required of it under the HVAC Subcontract, except any that have been excused.  Specifically, Stoer paid Benson Systems of Northern California for ninety percent of the work Benson Systems of Northern California completed each month, as billed in Benson Systems of Northern California's invoices for the HVAC Subcontract.

141.    Benson Systems of Northern California breached the HVAC Subcontract by failing to perform competent and quality construction work that complied with the schedule, scope of work, and budget.  Benson Systems of Northern California also

breached the HVAC Subcontract by overbilling Stoer for work that Benson Systems of Northern California had not yet completed.  Benson Systems of Northern California also breached the HVAC Subcontract by not having a valid California contractor's license.

142.    As a result of Benson Systems of Northern California's breach of the HVAC Subcontract, Benson Systems of Northern California had to redo the work, and when such work proved to be insufficient yet again, Stoer was forced to hire new subcontractors to redo Benson Systems of Northern California's unsatisfactory work and finish Benson Systems of Northern California's incomplete work.  Benson Systems of Northern California's  breach caused Stoer to fall behind schedule for the Project and also forced Stoer to incur additional, unnecessary costs.

143.    Benson Systems of Northern California's breach of the HVAC Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary damages according to proof.  Further, Stoer has suffered damage to its reputation due to Benson Systems of Northern California's breach of the HVAC Subcontract.

144.    On or about October 8, 2018, Stoer and Benson Systems of Northern California entered into a written Fire Sprinkler Subcontract.  Pursuant to the Fire Sprinkler Subcontract, Benson Systems of Northern California agreed to furnish all labor, materials, equipment, and other facilities required to perform the scope of work referenced and fully incorporated in the Fire Sprinkler Subcontract.  Benson Systems of Northern California also assumed a duty to perform the scope of work in the Fire Sprinkler Subcontract in a workmanlike manner and in accordance with applicable standard industry practices. Benson Systems of Northern California agreed to prosecute its work in a prompt and diligent manner in accordance with Stoer's progress schedule, as set forth in the Fire Sprinkler Subcontract, without delaying or hindering Stoer's work, or the work of other subcontractors.  Further, Benson Systems of Northern California agreed to comply with all statutes, codes, regulations, and other applicable laws, and to perform the construction work with the proper licenses and registrations.  Benson Systems of Northern California specifically agreed that it was and at all relevant times would be duly licensed by, and in

good standing with, the CSLB.

145.   In consideration for Benson Systems of Northern California's work, Stoer agreed to pay Benson Systems of Northern California a specific sum for Benson Systems of Northern California's strict performance of its work in conformance with the terms of the Fire Sprinkler Subcontract.  Stoer agreed to pay Benson Systems of Northern California in monthly progress payments for ninety percent of the work Benson Systems of Northern California completed each month.  Once Benson Systems of Northern California completed the construction work in conformity with the Fire Sprinkler Subcontract, and once Stoer and the owner of the Project accepted the work, Stoer would make final payment to  Benson Systems of Northern California.

146.   Stoer fully performed all the terms and conditions required of it under the Fire Sprinkler Subcontract, except any that have been excused.  Specifically, Stoer paid Benson Systems of Northern California for ninety percent of the work Benson Systems of Northern California completed each month, as billed in Benson Systems of Northern California's invoices for the Fire Sprinkler Subcontract.

147.   Benson Systems of Northern California breached the Fire Sprinkler Subcontract by failing to perform competent and quality construction work that complied with the schedule, scope of work, and budget.  Benson Systems of Northern California also breached the Fire Sprinkler Subcontract by overbilling Stoer for work that Benson Systems of Northern California had not yet completed.  Benson Systems of Northern California also breached the Fire Sprinkler Subcontract by not having a valid California contractor's license.

148.   As a result of Benson Systems of Northern California's breach of the Fire Sprinkler Subcontract, Benson Systems of Northern California had to redo the work, and when such work proved to be insufficient yet again, Stoer was forced to hire new subcontractors to redo Benson Systems of Northern California's unsatisfactory work and finish Benson Systems of Northern California's incomplete work.  Benson Systems of Northern California's breach caused Stoer to fall behind schedule for the Project and also

34

1   forced Stoer to incur additional, unnecessary costs.

2        149.    Benson Systems of Northern California's breach of the Fire Sprinkler

3   Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary

4   damages according to proof.  Further, Stoer has suffered damage to its reputation due to

5   Benson Systems of Northern California's breach of the Fire Sprinkler Subcontract.

6        150.    On or about October 9, 2018, Stoer and Benson Systems of Northern

7   California entered into a written Fire Alarm Subcontract.  Pursuant to the Fire Alarm

8   Subcontract, Benson Systems of Northern California agreed to furnish all labor, materials,

9   equipment, and other facilities required to perform the scope of work referenced and fully

10  incorporated in the Fire Alarm Subcontract.  Benson Systems of Northern California also

11  assumed a duty to perform the scope of work in the Fire Alarm Subcontract in a

12  workmanlike manner and in accordance with applicable standard industry practices.

13  Benson Systems of Northern California agreed to prosecute its work in a prompt and

14  diligent manner in accordance with Stoer's progress schedule without delaying or

15  hindering Stoer's work, or the work of other subcontractors.  Further, Benson Systems of

16  Northern California agreed to comply with all statutes, codes, regulations, and other

17  applicable laws, and to perform the construction work with the proper licenses and

18  registrations.  Benson Systems of Northern California specifically agreed that it was and at

19  all relevant times would be duly licensed by, and in good standing with, the CSLB.

20       151.    In consideration for Benson Systems of Northern California's work, Stoer

21  agreed to pay Benson Systems of Northern California a specific sum for Benson Systems

22  of Northern California's strict performance of its work in conformance with the terms of

23  the Fire Alarm Subcontract.  Stoer agreed to pay Benson Systems of Northern California in

24  monthly progress payments for ninety percent of the work Benson Systems of Northern

25  California completed each month.  Once Benson Systems of Northern California

26  completed the construction work in conformity with the Fire Alarm Subcontract, and once

27  Stoer and the owner of the Project accepted the work, Stoer would make final payment to

28  Benson Systems of Northern California.

152.    Stoer fully performed all the terms and conditions required of it under the Fire Alarm Subcontract, except any that have been excused.  Specifically, Stoer paid Benson Systems of Northern California for ninety percent of the work Benson Systems of Northern California completed each month, as billed in Benson Systems of Northern California's invoices for the Fire Alarm Subcontract.

153.    Benson Systems of Northern California breached the Fire Alarm Subcontract by failing to perform competent and quality construction work that complied with the schedule, scope of work, and budget.  Benson Systems of Northern California also breached the Fire Alarm Subcontract by overbilling Stoer for work that Benson Systems of Northern California had not yet completed.  Benson Systems of Northern California also breached the Fire Alarm Subcontract by not having a valid California contractor's license.

154.    As a result of Benson Systems of Northern California's breach of the Fire Alarm Subcontract, Benson Systems of Northern California had to redo the work, and when such work proved to be insufficient yet again, Stoer was forced to hire new subcontractors to redo Benson Systems of Northern California's unsatisfactory work and finish Benson Systems of Northern California's incomplete work.  Benson Systems of Northern California's breach caused Stoer to fall behind schedule for the Project and also forced Stoer to incur additional, unnecessary costs.

155.    Benson Systems of Northern California's breach of the Fire Alarm Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary damages according to proof.  Further, Stoer has suffered damage to its reputation due to Benson Systems of Northern California's breach of the Fire Alarm Subcontract.

156.    On or about October 9, 2018, Stoer and Benson Systems of Northern California entered into a written LV Subcontract.  Pursuant to the LV Subcontract, Benson Systems of Northern California agreed to furnish all labor, materials, equipment, and other facilities required to perform the scope of work referenced and fully incorporated in the LV Subcontract.  Benson Systems of Northern California also assumed a duty to perform the scope of work in the LV Subcontract in a workmanlike manner and in accordance with

36

applicable standard industry practices.  Benson Systems of Northern California agreed to prosecute its work in a prompt and diligent manner in accordance with Stoer's progress schedule, as set forth in the LV Subcontract, without delaying or hindering Stoer's work, or the work of other subcontractors.  Further, Benson Systems of Northern California agreed to comply with all statutes, codes, regulations, and other applicable laws, and to perform the construction work with the proper licenses and registrations.  Benson Systems of Northern California specifically agreed that it was and at all relevant times would be duly licensed by, and in good standing with, the CSLB.

157.    In consideration for Benson Systems of Northern California's work, Stoer agreed to pay Benson Systems of Northern California a specific sum for Benson Systems of Northern California's strict performance of its work with respect to the LV Subcontract. Stoer agreed to pay Benson Systems of Northern California in monthly progress payments for ninety percent of the work Benson Systems of Northern California completed each month.  Once Benson Systems of Northern California completed the construction work in conformity with the LV Subcontract, and once Stoer and the owner of the Project accepted the work, Stoer would make final payment to  Benson Systems of Northern California.

158.    Stoer fully performed all the terms and conditions required of it under the LV Subcontract, except any that have been excused.  Specifically, Stoer paid Benson Systems of Northern California for ninety percent of the work Benson Systems of Northern California completed each month, as billed in Benson Systems of Northern California's invoices for the LV Subcontract.

159.    Benson Systems of Northern California breached the LV Subcontract by failing to perform competent and quality construction work that complied with the schedule, scope of work, and budget.  Benson Systems of Northern California also breached the LV Subcontract by overbilling Stoer for work that Benson Systems of Northern California had not yet completed.  Benson Systems of Northern California also breached the LV Subcontract by not having a valid California contractor's license.

160.    As a result of Benson Systems of Northern California's breach of the LV

Subcontract, Benson Systems of Northern California had to redo the work, and when such work proved to be insufficient yet again, Stoer was forced to hire new subcontractors to redo Benson Systems of Northern California's unsatisfactory work and finish Benson Systems of Northern California's incomplete work.  Benson Systems of Northern California's breach caused Stoer to fall behind schedule for the Project and also forced Stoer to incur additional, unnecessary costs.

161.    Benson Systems of Northern California's breach of the LV Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary damages according to proof.  Further, Stoer has suffered damage to its reputation due to Benson Systems of Northern California's breach of the LV Subcontract.

162.    On or about October 17, 2018, Stoer and Benson Systems of Northern California entered into a written Electrical Subcontract.  Pursuant to the Electrical Subcontract, Benson Systems of Northern California agreed to furnish all labor, materials, equipment, and other facilities required to perform the scope of work referenced and fully incorporated in the Electrical Subcontract.  Benson Systems of Northern California also assumed a duty to perform the scope of work in a workmanlike manner and in accordance with applicable standard industry practices.  Benson Systems of Northern California agreed to prosecute its work in a prompt and diligent manner in accordance with Stoer's progress schedule, as set forth in the Electrical Subcontract, without delaying or hindering Stoer's work, or the work of other subcontractors.  Further, Benson Systems of Northern California agreed to comply with all statutes, codes, regulations, and other applicable laws, and to perform the construction work with the proper licenses and registrations.  Benson Systems of Northern California specifically agreed that it was and at all relevant times would be duly licensed by, and in good standing with, the CSLB.

163.    In consideration for Benson Systems of Northern California's work, Stoer agreed to pay Benson Systems of Northern California a specific sum for Benson Systems of Northern California's strict performance of its work with respect to the Electrical Subcontract.  Stoer agreed to pay Benson Systems of Northern California in monthly

progress payments for ninety percent of the work Benson Systems of Northern California completed each month.  Once Benson Systems of Northern California completed the construction work in conformity with the Electrical Subcontract, and once Stoer and the owner of the Project accepted the work, Stoer would make final payment to Benson Systems of Northern California.

164.    Stoer fully performed all the terms and conditions required of it under the Electrical Subcontract, except any that have been excused.  Specifically, Stoer paid Benson Systems of Northern California for ninety percent of the work Benson Systems of Northern California completed each month, as billed in Benson Systems of Northern California's invoices for the Electrical Subcontract.

165.    Benson Systems of Northern California breached the Electrical Subcontract by failing to perform competent and quality construction work that complied with the schedule, scope of work, and budget.  Benson Systems of Northern California also breached the Electrical Subcontract by overbilling Stoer for work that Benson Systems of Northern California had not yet completed.  Benson Systems of Northern California also breached the Electrical Subcontract by not having a valid California contractor's license.

166.    As a result of Benson Systems of Northern California's breach of the Electrical Subcontract, Benson Systems of Northern California had to redo the work, and when such work proved to be insufficient yet again, Stoer was forced to hire new subcontractors to redo Benson Systems of Northern California's unsatisfactory work and finish Benson Systems of Northern California's incomplete work.  Benson Systems of Northern California's breach caused Stoer to fall behind schedule for the Project and also forced Stoer to incur additional, unnecessary costs.

167.    Benson Systems of Northern California's breach of the Electrical Subcontract substantially caused Stoer's harm.  Specifically, Stoer has suffered monetary damages according to proof.  Further, Stoer has suffered damage to its reputation due to Benson Systems of Northern California's breach of the Electrical Subcontract.

168.    Defendant Benson Security Systems is liable for Benson Systems of

39

Northern California's breach of the six written Subcontracts as the alter ego or single enterprise of Benson Systems of Northern California.

WHEREFORE, Stoer prays for relief as set forth below.

## FIFTH CAUSE OF ACTION

### (Negligence – Against All Defendants)

169.    Stoer incorporates herein by reference each of the preceding paragraphs as if recited herein in full.

170.    By causing Benson Systems of Northern California, to enter into the Subcontracts, the Benson Defendants assumed a duty of reasonable care to ensure that Benson Systems of Northern California performed the construction work specified in the Subcontracts, which includes competently and timely completing same, as well as completing the construction work in accordance with the scopes of and budget work identified in each Subcontract.

171.    The Benson Defendants breached the duty of reasonable care by failing to cause Benson Systems of Northern California to provide competent construction work, failing to complete such construction work within the schedules and scopes of work specified by the Subcontracts, and failing to be duly licensed by the CSLB.

172.    As a result of the Benson Defendants' breach of the duty of reasonable care, Stoer suffered reputational and monetary damages according to proof.

173.    But for the Benson Defendants' breach of the duty of reasonable care owed to Stoer, Stoer would not have suffered damages.

WHEREFORE, Stoer prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

### (Violation of California Business and Professions Code § 17200 – Against All Defendants)

174.    Stoer incorporates herein by reference each of the preceding paragraphs as if recited herein in full.

175.    The Benson Defendants engaged in unlawful, fraudulent, and/or unfair

1  business practices when it fraudulently represented to Stoer that Benson Systems of

2  Northern California had a valid California contractor's license.  The Benson Defendants

3  made this misrepresentation to Stoer to induce Stoer to execute the Subcontracts with

4  Benson Systems of Northern California so that the Benson Defendants could collect fees

5  for Benson Systems of Northern California's unlawful and unauthorized construction work

6  and subcontracting services performed on the Project.

7  176.    The Benson Defendants also engaged in unlawful, fraudulent, and/or unfair

8  business practices when it fraudulently billed Stoer for work not yet performed pursuant to

9  the Subcontracts.  The Benson Defendants engaged in fraudulent billing practices solely

10  for their personal gain, at the exclusion of Stoer.

11  177.    As a result of the Benson Defendants' unlawful, fraudulent, and/or unfair

12  business practices, Stoer has suffered monetary damages according to proof.

13  WHEREFORE, Stoer prays for relief as set forth below.

14  <u>**SEVENTH CAUSE OF ACTION**</u>

15  **(Breach of the Covenant of Good Faith and Fair Dealing – Against All Defendants)**

16  178.    Stoer incorporates herein by reference each of the preceding paragraphs as if

17  recited herein in full.

18  179.    On or about September 24, 2018, the Benson Defendants induced Stoer to

19  enter into a written Plumbing Subcontract with their subsidiary and alter ego, Benson

20  Systems of Northern California.

21  180.    On or about October 8, 2018, the Benson Defendants induced Stoer to enter

22  into a written HVAC Subcontract and Fire Sprinkler Subcontract with their subsidiary and

23  alter ego, Benson Systems of Northern California.

24  181.    On or about October 9, 2018,  the Benson Defendants induced Stoer to enter

25  into a written Fire Alarm Subcontract and a Low Voltage Subcontract with their subsidiary

26  and alter ego, Benson Systems of Northern California.

27  182.    On or about October 17, 2018, the Benson Defendants induced Stoer to enter

28  into a written Electrical Subcontract with their subsidiary and alter ego, Benson Systems of

1  Northern California.

2      183.    Stoer fully performed all the terms and conditions required of it under the

3  Subcontracts, except any that have been excused.

4      184.    All conditions required for Benson Systems of Northern California's

5  performance of the Subcontracts have occurred.

6      185.    The Benson Defendants unfairly interfered with Stoer's right to receive the

7  benefits of the Subcontracts when the Benson Defendants caused Benson Systems of

8  Northern California to breach the Subcontracts, fraudulently bill Stoer for same, and when

9  the Benson Defendants fraudulently misrepresented that Benson Systems of Northern

10 California was authorized and duly licensed by the CSLB to perform construction work

11 and subcontracting services on the Project.

12     186.    As a result, Stoer suffered reputational and monetary damages according to

13 proof.

14         WHEREFORE, Stoer prays for relief as set forth below.

15              **EIGHTH CAUSE OF ACTION**

16     **(Intentional Interference With Contractual Relations – Against All Defendants)**

17     187.    Stoer incorporates herein by reference each of the preceding paragraphs as if

18 recited herein in full.

19     188.    Stoer had a construction contract (the "Main Contract") with LD Milpitas

20 Property, LLC regarding the construction of the Project.

21     189.    The Benson Defendants knew of this contract.  The Benson Defendants

22 induced Stoer to enter into six Subcontracts with Benson Systems of Northern California

23 for construction work on the Project.

24     190.    The Benson Defendants' conduct, including by allowing Benson Systems of

25 Northern California to enter into the Subcontracts without being duly licensed by the

26 CSLB to perform construction work in California and, notwithstanding the forgoing,

27 allowing Benson Systems of Northern California to perform incompetent and incomplete

28 construction work on the Project, thereby preventing Stoer's performance or making

1    Stoer's performance of the Main Contract more expensive or difficult.

2        191.    The Benson Defendants intended to disrupt Stoer's performance of the Main

3    Contract, or knew that disruption of performance was certain or substantially certain to

4    occur.

5        192.    As a result of the Benson Defendants' conduct, Stoer was harmed.

6        193.    The Benson Defendants' conduct was a substantial factor in causing Stoer's

7    harm.

8        WHEREFORE, Stoer prays for relief as set forth below.

9                    **<u>NINTH CAUSE OF ACTION</u>**

10    **(Intentional Interference With Prospective Economic Relations – All Defendants)**

11        194.    Stoer incorporates herein by reference each of the preceding paragraphs as if

12    recited herein in full.

13        195.    Stoer and the owner of the Project, LD Milpitas Property, LLC were in an

14    economic relationship that would have resulted in an economic benefit to Stoer.

15        196.    The Benson Defendants knew of Stoer and LD Milpitas Property, LLC's

16    relationship.

17        197.    The Benson Defendants engaged in wrongful conduct, by allowing Benson

18    Systems of Northern California to enter into the Subcontracts without being duly licensed

19    by the CSLB to perform construction work in California and allowing Benson Systems of

20    Northern California to perform incompetent and incomplete construction work on the

21    Project.

22        198.    By engaging in this wrongful conduct, the Benson Defendants intended to

23    disrupt the relationship between Stoer and LD Milpitas Property, LLC, or knew that

24    disruption of the relationship was certain or substantially certain to occur.

25        199.    Stoer and LD Milpitas Property, LLC's relationship was disrupted.

26        200.    As a result of the Benson Defendants' conduct, Stoer was harmed.

27        201.    The Benson Defendants' wrongful conduct was a substantial factor in

28    causing Stoer's harm.

WHEREFORE, Stoer prays for relief as set forth below.

## TENTH CAUSE OF ACTION

### (Negligent Interference With Prospective Economic Relations – Against All Defendants)

202.   Stoer incorporates herein by reference each of the preceding paragraphs as if recited herein in full.

203.   Stoer and the owner of the Project, LD Milpitas Property, LLC, were in an economic relationship that would have resulted in an economic benefit to Stoer.

204.   The Benson Defendants knew or should have known of Stoer and LD Milpitas Property, LLC's relationship.

205.   The Benson Defendants knew or should have known that Stoer and LD Milpitas Property, LLC's relationship would be disrupted if the Benson Defendants failed to act with reasonable care.

206.   The Benson Defendants failed to act with reasonable care by engaging in wrongful conduct, including by inducing Stoer to enter into six Subcontracts with their subsidiary and alter ego, Benson Systems of Northern California, which was not duly licensed by the CSLB to perform construction work in California and, who performed incompetent and incomplete construction work on the Project.

207.   Stoer and LD Milpitas Property, LLC's relationship was disrupted as a result of the Benson Defendants' wrongful conduct.

208.   As a result of the Benson Defendants' conduct, Stoer was harmed.

209.   The Benson Defendants' wrongful conduct was a substantial factor in causing Stoer's harm.

WHEREFORE, Stoer prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Stoer prays for judgment against the Benson Defendants as follows:

1.   For damages in the principal sum of not less than $6,267,710.99 and

PLAINTIFF STOER CONSTRUCTION, INC.'S FIRST AMENDED COMPLAINT

1   according to proof;

2        2.      For disgorgement of all fees paid to the Benson Systems of Northern

3   California and the Benson Defendants in connection with the six Subcontracts;

4        3.      For restitution according to proof;

5        4.      For all other damages incurred and according to proof;

6        5.      For punitive damages;

7        6.      For pre-judgment and post-judgment interest at the maximum rate legal rate

8   allowed by law;

9        7.      For attorney fees and costs; and

10       8.      For such other and further relief as the Court may deem just and proper.

11

12  DATED:  September 23, 2022              HOGE, FENTON, JONES & APPEL, INC.

13

14

                                          By: _____
15
                                              Eugene Ashley
16                                            Dennis S. Zell
                                              Emma B. Lloyd
17                                            Attorneys for Plaintiff STOER
                                              CONSTRUCTION, INC.
18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

3

4

I hereby certify that on September 23, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the Electronic Service List for this case.

5

*/s/ Kate A. Ibarra*

6

Kate A. Ibarra

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

)